REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2475

September Term, 2013

_____

TYSHON LETEEK JONES

v.

STATE OF MARYLAND

_____

Krauser, C.J.,
Nazarian,
Leahy,

JJ.

_____

Opinion by Krauser, C.J.

_____

Filed: April 29, 2015

Accused of having participated, with four other men, in the robbery, shooting, and killing of Julian Kelly, Tyshon Jones, appellant, was charged with first-degree murder, armed robbery, robbery, the use of a handgun in the commission of a felony or a crime of violence and, of particular relevance to the issue raised by this appeal, second-degree murder *with the intent to inflict serious bodily harm*. A jury, in the Circuit Court for Montgomery County, subsequently found him not guilty of first-degree murder, second-degree murder *with the intent to inflict serious bodily harm*, armed robbery, and robbery but was unable to reach a verdict as to the charges of first-degree felony murder and the use of a handgun in the commission of a felony or a crime of violence. Consequently, the Montgomery County circuit court granted a mistrial as to those two charges.

Although the State initially announced its intention to retry Jones for first-degree felony murder, it later changed its mind, upon agreeing with Jones that there was no underlying felony to support that charge. Consequently, the State requested that the circuit court rule that, together with the handgun charge, second-degree felony murder *based on first-degree assault* was a charge "pending" against Jones. Over Jones's objection, the circuit court so ruled. This interlocutory appeal, from that ruling, followed.

However, because second-degree murder *with the intent to inflict serious bodily harm*, the offense of which Jones was acquitted, and second degree felony murder *based on first-degree assault*, the charge upon which the State now wishes to proceed, are the same offense for double jeopardy purposes, we reverse.

1

Shortly before midnight on August 20, 2010, Julian Kelly was beaten, robbed, and shot by a group of men while on his way home from work. This criminal episode began when, according to witnesses, Kelly was surrounded by "maybe . . . five" men who began "kicking and punching" him, upon his refusal to surrender his backpack and necklace. After he was knocked to the ground, one of Kelly's assailants stood over him and shot him five times, three times in the torso and twice in the head, wounds from which Kelly died several weeks later.

Identified as one of Kelly's assailants, Jones was tried before a jury, in the Montgomery County circuit court, for his purported participation in Kelly's robbery and murder. At trial, the State advanced two different theories of the role Jones played in the perpetration of those crimes. The first theory alleged that Jones, although not a participant in the robbery and the beating, shot Kelly after mistaking him for someone else. The second suggested that Jones had, in fact, participated in both the robbery and the beating and had shot Kelly when Kelly had refused to relinquish his belongings. In response, Jones, who did not testify at trial, attempted to establish through the testimony of several witnesses that he had merely been a bystander to the incident and that it had been one of Kelly's assailants, not he, who had fired the fatal shots.

At the close of evidence, the court instructed the jury on first-degree murder, first-degree felony murder, second-degree murder *with the intent to inflict serious bodily harm*, armed robbery, robbery, and the use of a firearm in the commission of a felony or a crime of violence. With respect to first-degree felony murder, the court instructed the jury

2

that, in order to convict Jones of that offense, it must find that Jones murdered Kelly "during the commission" of an underlying felony and that, here, the underlying felony could have been either armed robbery, robbery, or assault in the first degree.

Section 2-201(a)(4) of the Criminal Law Article[1] states that a murder "is in the first degree" if it is "committed in the perpetration of or an attempt to perpetrate" a number of enumerated felonies. Although robbery and armed robbery, two of the three offenses the court below included in its instructions, could underlie a finding of first-degree felony murder, first-degree assault cannot. Thus, both Jones and the State agree that that portion of the circuit court's instructions was an incorrect statement of the law.

The jury found Jones not guilty of first-degree murder, second-degree murder *with the intent to inflict serious bodily harm*, robbery, and armed robbery. But, as previously noted, it was unable to reach a verdict on the charges of first-degree felony murder and the use of a handgun in the commission of a felony or a crime of violence. When Jones moved for a mistrial with respect to those charges, the court granted that motion.

The State then informed Jones of its intention to retry him on the two verdictless counts, that is, first-degree felony murder and the use of a handgun in the commission of a felony or a crime of violence. Jones responded by moving for a judgment of acquittal as to the first-degree felony murder charge,[2] asserting that, since first-degree assault was not

---

[1] Md. Code Crim. Law § 2-201(a)(4) (2002, 2012 Repl. Vol.)

[2] Jones also moved to dismiss the use of a handgun charge based on the principle of "collateral estoppel," a motion that the circuit court denied. On appeal, however, Jones does not raise any contentions related to the denial of that motion and concedes that he may be retried on the use of a handgun charge.

a "predicate felony" for a charge of first-degree felony murder, his acquittal on the charges of robbery and armed robbery meant that there was no felony that could serve as the underlying offense for the charge of first-degree felony murder. While conceding in its opposition to Jones's motion that it could not retry Jones on first-degree felony murder, the State insisted that it could retry him on the charge of second-degree felony murder *based on first-degree assault* because, though first-degree assault is not an underlying felony for a charge of first-degree felony murder, it can serve as an underlying felony for a charge of second-degree felony murder.

After the court, at the hearing that ensued on Jones's motion, granted a judgment of acquittal as to first-degree felony murder, it turned to the State's request to retry Jones on the charge of second-degree felony murder *based on first-degree assault*. Jones asserted that the constitutional prohibition against double jeopardy barred the State from proceeding on such a charge. The circuit court, however, flatly rejected that claim. It stated that second-degree felony murder *based on first-degree assault* was a "viable" charge as it arose "out of the facts of this case" and because Jones had "not been acquitted" of it or of the underlying offense of first-degree assault. Consequently, the court declared that "double jeopardy would not bar the prosecution" of Jones on the charge of second-degree felony murder *based on first-degree assault*. This interlocutory appeal followed, after which the circuit court stayed all proceedings pending our resolution of this issue.

## II.

Jones contends that his acquittal of second-degree murder *with the intent to inflict serious bodily harm* bars the State from re-prosecuting him for second-degree felony

4

murder *based on first-degree assault*. He maintains that, since all of the elements of second-degree murder *with the intent to inflict serious bodily harm* are to be found in the elements of second-degree felony murder *based on first-degree assault*, and because only one of those two offenses includes an element that the other does not, the two offenses must be deemed to be the same for the purposes of double jeopardy, and, in that event, his acquittal of one offense would bar a subsequent prosecution for the other.

Preliminarily, we note that there is no dispute as to the propriety of this interlocutory appeal, given that a defendant "has the right to immediate appellate review of an adverse ruling concerning a double jeopardy claim." *Kendall v. State*, 429 Md. 476, 484 n.10 (2012). And, in conducting that review, we give "no deference to the lower court's resolution of the matter." *Scriber v. State*, 437 Md. 399, 407 (2014) (citing *Giddins v. State*, 393 Md. 1, 15 (2006)). In short, we perform a review de novo.

With that guiding principle in mind, we begin our analysis by noting that the Fifth Amendment to the United States Constitution precludes any person from being "twice put in jeopardy of life or limb." U.S. Const. amend V. In other words, an accused cannot be made "twice accountable for the same offense." *State v. Long*, 405 Md. 527, 536 (2008), a prohibition that is applicable to the states "through the Fourteenth Amendment," *Scriber*, 437 Md. at 407. What is more, "Maryland common law provides well-established protections for individuals against being twice put in jeopardy." *Id.* at 408.

Specifically, the prohibition against double jeopardy bars "multiple punishments and trials for the same offense." *Long*, 405 Md. at 536 (citing *United States v. Wilson*, 420 U.S. 332, 343 (1975)). The "appropriate test for determining whether [two] different

statutory or common law offenses" are to be "treated as the same offense for double jeopardy purposes" is the "required evidence test."[3] *Holbrook v. State*, 364 Md. 354, 369–70 (2001). That test "focuses upon the evidence necessary to sustain a conviction on each offense." *Thomas v. State*, 277 Md. 257, 262 (1976). If each offense "requires proof of a fact which the other does not, or . . . if each offense contains an element which the other does not, the offenses are not the same for double jeopardy purposes even though arising from the same conduct or episode." *Id.* at 267. But, of particular relevance to the issue before us in this appeal, two offenses are considered "the same within the meaning of the prohibition against double jeopardy," and thus successive prosecutions are barred, "where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other." *Id.*

In the instant case, the question before us is whether the offense of second-degree murder *with the intent to inflict serious bodily harm*—of which Jones was acquitted—and the offense of second-degree felony murder *based on first-degree assault*—on which the State now wishes to proceed—must be "deemed to be the same" for "double jeopardy purposes," under the required evidence test. To answer this question, we must decide whether all the elements of the latter offense are elements of the former.

---

[3] This test was first set forth by the Supreme Court of the United States in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). For that reason, the "required evidence test" is sometimes referred to as the "*Blockburger* test." *See, e.g.*, *Holbrook v. State*, 364 Md. 354, 369 n.9 (2001). Other names for this same test include the "same evidence test," the "elements test," and the "same elements test." *Id.*

## III.

## A.

Under section 2-204(a) of the Criminal Law Article, a "murder that is not in the first degree . . . is in the second degree."[4]  Md. Code Crim. Law § 2-204(a) (2002, 2012 Repl. Vol.) ("CL").  Although the statute itself does not further define that offense, there are, according to Maryland decisional law, "four different types" of second-degree murder.  They are: first, the killing of another person, other than by poison or lying in wait, with the intent to kill but without the deliberation and premeditation required for first-degree murder; second, the killing of another person with the intent to inflict such serious bodily harm that death would be the likely result; third, "depraved heart murder," which is to say, "a killing resulting from 'the deliberate perpetration of a knowingly dangerous act with reckless and wanton unconcern and indifference as to whether anyone is harmed or not'"; and fourth, "murder committed in the perpetration of a felony other than those enumerated in the first-degree murder statutes."  *Thornton v. State*, 397 Md. 704, 721–22, 721 n.6 (2007).

The second of these four "types" of second-degree murder was the one on which the jury was instructed at Jones's trial, namely, second-degree murder *with the intent to inflict serious bodily harm*.  Although this type of second-degree murder is a specific-intent crime, it does not require the State to prove a "conscious or purposeful design" on the part

---

[4] A murder is "in the first degree if it is (1) a deliberate, premeditated, and willful killing; (2) committed by lying in wait; (3) committed by poison; or (4) committed in the perpetration of or an attempt to perpetrate" specific enumerated felonies, which include "robbery" and "armed robbery."  CL § 2-201(a).

of the defendant "to kill the victim," but only a specific intent to inflict "serious" or "grievous bodily harm"; in other words, the intent "to cause such severe harm that death would be **the** likely result, not merely a possible result," of the defendant's intentional conduct. *Id.* at 730–31 (emphasis in original). That is to say, "a defendant should only be held liable" for second-degree murder *with the intent to inflict serious bodily harm* "if death would be the likely result of the harm he [or she] intended." *Id.* at 730. To ascertain that "intent," we employ an objective standard, specifically: whether "a reasonable person, under the circumstances," could or should have "foreseen that death would likely ensue as a result of his or her conduct." *Id.* at 713.

In sum, the elements of second-degree murder *with the intent to inflict serious bodily harm*, as articulated by the Court of Appeals, are: first, that the defendant's conduct caused the victim's death, and, second, that the defendant, at the time he engaged in the conduct, intended to inflict such serious bodily harm that the victim's death would be the likely result of the defendant's conduct.[5]

---

[5] The Maryland Criminal Pattern Jury Instruction for second-degree murder provides:

> Second degree murder is the killing of another person with either the intent to kill or the intent to inflict such serious bodily harm that death would be the likely result. Second degree murder does not require premeditation or deliberation. In order to convict the defendant of second degree murder, the State must prove:
>
> (1) that the defendant caused the death of (name); and

(continued…)

**B.**

We next turn to the offense for which the State now wishes to prosecute Jones: second-degree felony murder *based on first-degree assault*. Second-degree felony murder, the fourth of the four "types" of second-degree murder recognized under Maryland law, *Thornton*, 397 Md. at 721 n.6, is a homicide "committed in the perpetration of a felony other than one enumerated in the first degree murder statute," *Fisher v. State*, 367 Md. 218, 225 (2001), which we shall refer to as either the "underlying felony" or the "predicate felony." Recognizing second-degree felony murder as an offense in Maryland furthers the "primary purpose of the modern felony murder rule," explained the Court of Appeals, by punishing as murder "a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did not intend to kill." *Id.* at 262. "If the felonious conduct," that is, the underlying felony or predicate felony, "under all of the circumstances, made death a foreseeable consequence, it is reasonable," Maryland's highest Court excogitated, "for the law to infer from the commission of the felony under those circumstances the malice that qualifies the homicide as murder." *Id.* The foreseeability of death "is

---

(continued…)

> (2) that the defendant engaged in the deadly conduct either with the intent to kill or with the intent to inflict such serious bodily harm that death would be the likely result.

MPJI-Cr. 4:17.1.

9

determined by the nature of the crime **or** by the manner in which it was perpetrated in a given set of circumstances."[6] *Id.* at 263 (emphasis in original).

Subsequently, in *Roary v. State*, the Court of Appeals was asked to determine whether a first-degree assault that required, under section 3-202(a)(1) of the Criminal Law Article,[7] the intent to "cause or attempt to cause serious physical injury to another," was a "proper underlying felony to support a second-degree felony-murder conviction." 385 Md. 217, 230 (2005). In concluding that the assault in that case—specifically, Roary's repeatedly dropping a 20–30 pound boulder on the victim's head—could support such a conviction, the Court stressed that, to secure a conviction for second-degree felony murder, the underlying felony must be "sufficiently dangerous to life to justify application" of the felony-murder doctrine. *Id.* at 222, 229–30. The *Roary* Court then observed that a first-degree assault that "intentionally cause[s] or attempt[s] to cause serious physical injury to another" and that "creates a substantial risk of death" is "undoubtedly dangerous to human life" and that the "manner in which" the particular assault in that case had been committed, that is, by repeatedly dropping a boulder on the victim's head, was "also clearly dangerous to human life." *Id.* at 230. The Court ended its discussion of this issue by stating

---

[6] In *Fisher*, the Court of Appeals was asked to decide whether child abuse could be an underlying felony for the offense of second-degree felony murder. The Court concluded that the "child abuse of the character and degree described in the evidence" in that case was "inherently dangerous" and thus it could properly serve as an underlying felony for that offense. *Id.* at 263.

[7] Md. Code Crim. Law § 3-202(a)(1) (2002, 2012 Repl. Vol.). As the *Roary* Court recognized, "[a]ssault in the first degree also prohibits a person from committing an assault with a firearm," under section 3-202(a)(2) of the same Article. *Id.* at 230 n.9.

10

that "an assault in the first degree, when committed in a manner inherently dangerous to human life, as in this case, may be a predicate felony for second-degree felony-murder." *Id*. at 236.

Following the *Roary* decision, the Maryland State Bar Association's Standing Committee on Pattern Jury Instructions prepared an instruction on second-degree felony murder. *See* Comment, MPJI-Cr 4:17.7.2 (2006). The instruction is divided into two "parts." The first, "Part A," is captioned "Second Degree Felony Murder—Inherently Dangerous Nature of Felony: First Degree Assault" and reads as follows:

> The defendant is charged with the crime of second degree felony murder. Felony murder does not require the State to prove that the defendant intended to kill the person who was killed. In order to convict the defendant of second degree felony murder, the State must prove:
>
> (1) that [the defendant] committed the crime of first degree assault;
>
> (2) that [the defendant] killed (name); and
>
> (3) that the act resulting in the death of (name) occurred during the first degree assault.
>
> To convict the defendant of first degree assault, the State must prove:
>
> (1) that the defendant intentionally caused serious physical injury to (name); and
>
> (2) that the injury was not [consented to by (name)] [legally justified].

11

> For second degree felony murder, serious physical injury means injury that creates a substantial and foreseeable risk of death.

MPJI-Cr. 4:17.7.2A.

The "Notes on Use" that accompany this pattern jury instruction advise the circuit courts to give Part A of the instruction "if the defendant is charged with second degree felony murder and the predicate felony is first degree assault under Md. Crim. Law Code Ann. § 3-202(a)(1)"; that is, a first-degree assault committed by "intentionally caus[ing] or attempt[ing] to cause serious physical injury to another." The "Notes on Use" further advise that, if the defendant is "charged with second degree felony murder and the predicate felony is one that is inherently dangerous to human life because of the way it was committed," the circuit courts should give "Part B" of the pattern jury instruction. Part B is captioned "Second Degree Felony Murder—Inherently Dangerous Manner in which Felony was Perpetrated" and states:

> The defendant is charged with the crime of second degree felony murder. Felony murder does not require the State to prove that the defendant intended to kill the person who was killed. In order to convict the defendant of second degree felony murder, the State must prove:
>
> (1) that [the defendant] [[committed] [attempted to commit]] (identify the crime), a felony;
>
> (2) that the way in which (identify the crime) was committed or attempted, under all of the circumstances, created a reasonably foreseeable risk of death or of serious physical injury likely to result in death;
>
> (3) that as a result of the way in which (identify the crime) was committed or attempted, (name) was killed; and

12

     (4)  that the act resulting in the death of (name) occurred during the [[commission] [attempted commission] [escape from the immediate scene]] of the (identify the crime).

MPJI-Cr. 4:17.7.2B.

Both at the hearing below and on appeal, Jones has addressed only the elements of second-degree felony murder *based on first-degree assault* as they are set out in Part A of the pattern jury instructions. In other words, his focus has been solely on the elements of that offense when it is based on a first-degree assault committed by intentionally causing a serious physical injury to another. But the State could arguably prosecute Jones, at his retrial, for second-degree felony murder predicated on either form (or both forms) of first-degree assault, that is, a first-degree assault committed by intentionally causing or attempting to cause "serious physical injury to another," or a first-degree assault committed by "commit[ting] an assault with a firearm." CL § 3-202(a)(1)–(2).

If the State proceeds on a theory of second-degree felony murder *based on first-degree assault* where the underlying first-degree assault was committed by intentionally causing, or attempting to cause, a serious physical injury to the victim, then, in accordance with the "Notes on Use" accompanying the pattern jury instructions, Part A of the second-degree felony murder instruction would apply. In that event, the State would be required to prove: first, that Jones committed a first-degree assault; second, that Jones killed Kelly; and, third, that the act that killed Kelly occurred during Jones's commission of the first-degree assault. *See* MPJI-Cr 4:17.7.2A. Furthermore, to prove that Jones committed a first-degree assault that would be "sufficiently dangerous to life to justify application" of the felony-murder doctrine, *Roary*, 385 Md. at 229–30, the State would

13

have to show that Jones "intentionally caused serious physical injury" to Kelly, that is, an "injury that creates a substantial and foreseeable risk of death," MPJI-Cr 4:17.7.2A.

On the other hand, the State could arguably proceed, at Jones's retrial, on a theory of second-degree felony murder *based on first-degree assault* where the underlying first-degree assault was an assault committed with a firearm. Because no Maryland court has yet specifically addressed this form of second-degree felony murder, it is incumbent upon us to determine, now, what elements the State must prove to convict Jones of that offense.

We begin that determination by reiterating that, under Maryland law, an underlying felony can support a conviction for second-degree felony murder when it is committed in such a manner that it is dangerous to life. *See, e.g.*, *Fisher*, 367 Md. at 263. In the instant case, Jones purportedly used a firearm to shoot Kelly five times—three times in the torso, and two times in the head. Just as the Court of Appeals held, in *Roary v. State*, that a first-degree assault was dangerous to life "by the manner in which it was perpetrated" when it was committed by dropping a boulder onto a victim's head, we conclude that a first-degree assault is committed in a manner that is "dangerous to life" and "made death a foreseeable consequence" when it is committed by using a firearm to shoot the victim multiple times, including twice in the head. 385 Md. at 229–30. *See also Evans v. State*, 28 Md. App. 640, 705–06 (1975) (explaining that "the intent to kill or the intent to do grievous bodily harm" may be inferred from the use of a "deadly weapon directed at a vital part of the human body"); *Jenkins v. State*, 146 Md. App 83, 135 (2002), *rev'd on other*

14

*grounds* 375 Md. 284 (2003) (stating that "an intent to cause serious physical injury can be inferred" from the use of a firearm to commit a first-degree assault).

As the "Notes on Use" accompanying the pattern jury instructions make clear, Part B of the pattern jury instructions sets forth the elements of the offense of second-degree felony murder predicated on an underlying felony "that is inherently dangerous to human life because of the way it was committed." So if the State chooses to proceed on a theory of second-degree felony murder *based on first-degree assault*, where the underlying first-degree assault was an assault committed with a firearm, it would be required to prove: first, that Jones committed, or attempted to commit, the felony of first-degree assault with a firearm; second, that the way in which the assault with a firearm was committed created a "reasonably foreseeable risk of death or of serious physical injury likely to result in death"; third, that Kelly was killed as a result of Jones committing or attempting an assault with a firearm; and fourth, that the act resulting in Kelly's death occurred during the commission, attempted commission, or escape from the scene of that felony. *See* MPJI-Cr 4:17.7.2B.

## IV.

Having identified the elements of the offenses of second-degree murder *with the intent to inflict serious bodily harm* and second-degree felony murder *based on first-degree assault*, we now apply the "required evidence test" to determine whether those offenses are the same for double jeopardy purposes. As we stated above, two offenses are "deemed to be the same for double jeopardy purposes" when "only one offense requires proof of an additional fact, so that all elements of one offense are present in the other." *Thomas*, 277

15

Md. at 267.  We believe that all the elements of the offense of second-degree murder *with the intent to inflict serious bodily harm* are elements of the offense of second-degree felony murder *based on first-degree assault*, and thus the two offenses qualify as the same offense under the Double Jeopardy Clause.

As we previously explained, second-degree murder *with the intent to inflict serious bodily harm* requires proof that the defendant intended to cause such severe harm that the victim's death would be the likely result of the defendant's actions and that the defendant's intentional conduct did, in fact, cause the victim's death.  *Thornton*, 397 Md. at 730, 733.  Second-degree felony murder *based on first-degree assault* requires, using admittedly different words, proof of these same elements.  To prove the commission of that offense, the State must show that the defendant's intentional conduct created either "a substantial and foreseeable risk of death" or "reasonably foreseeable risk of death or of serious physical injury likely to result in death" and that the victim died as a result of the defendant's conduct.  MPJI-Cr. 4:17.7.2A–B.

Although, as noted, the two offenses do not use precisely the same words to describe the degree of bodily harm that must result from the defendant's intentional conduct, their descriptions of that harm are essentially the same.  The injury, which second-degree murder *with the intent to inflict serious bodily harm* addresses, is an injury to the victim that is so serious that death would be the likely result.  Such an injury is the same as an injury that creates "a substantial and foreseeable risk of death" or a "serious physical injury likely to result in death," as required for a conviction for second-degree felony murder *based on first-degree assault*.

16

Having concluded that the two offenses address the infliction of a potentially mortal injury, we must now determine whether either of the offenses, or both of them, include an element that the other does not have, that is to say, whether each offense "requires proof of a fact which the other does not." *Scriber*, 437 Md. at 408. And, in this instance, only one of the offenses—second-degree felony murder *based on first-degree assault*—requires proof of a fact that the other offense—second-degree murder *with the intent to inflict serious bodily harm*—does not. Although both offenses require proof that the defendant's intentional conduct caused the victim's death and that the defendant's conduct was so dangerous to life that it made death a foreseeable result, second-degree felony murder *based on first-degree assault* goes on to require proof of an additional element, that is, that the defendant committed or attempted to commit the felony of first-degree assault, either by causing or attempting to cause serious physical injury to another or by committing an assault with a firearm. The reverse, however, is not true. Second-degree murder *with the intent to inflict serious bodily harm* does not require proof of an element that is not present in the offense of second-degree felony murder *based on first-degree assault*. Indeed, to prove all of the elements of second-degree felony murder *based on first-degree assault*, the State must first prove all the elements of second-degree murder *with the intent to inflict serious bodily harm*.

In short, the offenses at issue here must, under the required evidence test, be deemed to be the same for double jeopardy purposes. A subsequent prosecution on the charge of second-degree felony murder *based on first-degree assault* would therefore violate the

17

prohibition against double jeopardy, and the circuit court erred in concluding that a prosecution of Jones on that charge could proceed.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY MONTGOMERY COUNTY.**

18