*State of Maryland v. Tyshon Leteek Jones*, No. 52, September Term, 2015, Opinion by Raker, J.

**CRIMINAL LAW – FELONY MURDER – MERGER DOCTRINE:** *Roary v. State*, 385 Md. 217, 867 A.2d 1095 (2005), holding that first-degree assault may serve as a predicate for felony murder is overruled. The merger doctrine bars the application of the felony-murder doctrine whenever the underlying felony is an integral element of the homicide. First-degree assault cannot, as a matter of law, serve as the underlying felony to support felony murder because the assault merges into the resultant homicide, and may not be deemed a separate and independent offense that could support a conviction for felony murder.

Circuit Court for Montgomery County
Case No. 122854C

Argued: January 12, 2016
Reargued: September 9, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 52

September Term, 2015

_____

STATE OF MARYLAND

v.

TYSHON LETEEK JONES

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Battaglia, Lynne A.
         (Senior Judge,
             Specially Assigned)
Raker, Irma S. (Senior Judge,
             Specially Assigned),

JJ.

_____

Opinion by Raker, J.
Greene, Watts and Battaglia, JJ, dissent.

_____

Filed: February 24, 2017

In this interlocutory appeal, we must review this hydra headed case[1] involving double jeopardy, felony murder, second-degree murder, lesser included offenses and first-degree assault as a predicate for second-degree felony murder. The Court of Special Appeals held that after respondent, Tyshon Leteek Jones, was acquitted in jury trial number one of first-degree premeditated murder, second-degree specific-intent murder, robbery with a dangerous weapon, and robbery, he could not be tried in a subsequent trial for felony murder based upon first-degree assault because the re-trial was barred by the Double Jeopardy Clause of the United States Constitution. *Jones v. State*, 222 Md. App. 600, 619, 114 A.3d 256, 267 (2015).[2] We granted the State's petition for writ of certiorari, *State v. Jones*, 444 Md. 638, 120 A.3d 766 (2015), and following briefing and argument on January 12, 2016, on our own initiative, we asked the parties to brief and argue the following additional question:

---

[1] *Doe v. Hartz*, 52 F. Supp. 2d 1027, 1035 (N.D. Iowa 1999) describes hydra as follows:
> "Hydra, sometimes called the 'Lernean hydra,' was a many-headed serpent (usually described as having nine heads, actually less than the number of plaintiff's claims) slain by Hercules, who had to overcome the problem that every time he cut off one of Hydra's heads, it was replaced by two others. Hercules solved the problem by convincing his charioteer to burn the stumps as soon as Hercules knocked off one of Hydra's heads, thus preventing the double regrowth. *See*, *e.g.*, Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend 615 (Maria Leach, ed., Funk & Wagnalls, 1972); Thomas Bullfinch, Mythology 144 (Fuller abridged ed. 1959)."

[2] On remand, based upon the reasoning and holding of the Court of Special Appeals, the only charge the State could proceed to trial on would be use of a firearm charge. *Jones,* 222 Md. App. 600, 607 n.2, 114 A.3d 256, 260 n.2 (2015) (finding "Jones . . . may be retried on the use of a [firearm] charge.").

> "In deciding this case, should the Court re-consider its holding in *Roary v. State*, 385 Md. 217, 226-36, 867 A.2d 1095, 1100-6 (2005), as to whether first-degree assault may serve as a predicate for second-degree felony murder?"

*State v. Jones*, No. 52, 2016 Md. LEXIS 296 (May 20, 2016). We shall affirm the judgment of the Court of Special Appeals, overrule *Roary v. State*, 385 Md. 217, 867 A.2d 1095 (2005), and hold that first-degree assault may not serve as a predicate for second-degree felony murder when that assault is not collateral to the lethal act. We therefore reach the same result as the Court of Special Appeals, but not on the basis of double jeopardy.

## I.

The Grand Jury for Montgomery County indicted Tyshon Leteek Jones with the offenses of first-degree premediated murder, robbery with a dangerous weapon, and use of a firearm in the commission of a crime of violence or felony. He proceeded to trial before a jury and the jury returned a verdict of not guilty to the charges of first-degree premeditated murder, second-degree specific-intent murder, robbery with a dangerous weapon, and robbery. The jury was unable to agree as to first-degree felony murder and use of a firearm in the commission of a crime of violence or felony, and the court declared a mistrial as to those counts.[3] Thereafter, the State sought to prosecute Jones for second-

---

[3] After trial, the circuit court granted a motion for judgment of acquittal as to first-degree felony murder predicated on first-degree assault. At trial, the trial court and the parties concluded erroneously that first-degree assault satisfied the statutory requirement as a predicate for first-degree felony murder. Actually, first-degree (footnote continued…)

degree felony murder predicated on first-degree assault.  Respondent interposed a plea of double jeopardy, which the court denied.  Respondent noted an interlocutory appeal to the Court of Special Appeals, which reversed on double jeopardy grounds.  *Jones,* 222 Md. App. at 619, 114 A.3d at 267.  We granted the State's petition for certiorari,[4] and as indicated above, determined to re-reconsider our holding in *Roary v. State*, which is the foundation and predicate for petitioner's charge for second-degree felony murder based on first-degree assault.  Inasmuch as petitioner was acquitted in his jury trial of first-degree intentional murder, and second-degree intent to inflict serious harm murder, the only basis remaining for the State to proceed in a second prosecution was on second-degree felony murder based upon first-degree assault.

II.

---

assault is not included in the statutorily listed offenses as a predicate for first-degree felony murder.  *See* Md. Code Ann., Crim. Law § 2-201(a)(4*)* (2002, 2012 Repl. Vol., 2016 Supp.).

[4] In the petition for writ of certiorari, the State asked us to consider the following questions:
"1.  As a matter of first impression, where the modality of the commission of a first degree assault is the use of a firearm, is first degree assault an inherently dangerous felony capable of supporting a conviction for second degree felony murder or a non-inherently dangerous felony that would support a conviction for second degree felony murder only if committed in an inherently dangerous manner?
2.  As a matter of first impression, where the modality of the commission of a first degree assault is the intent to cause or attempt to cause serious physical injury, is the first degree assault a lesser included offense of second degree intent-to-inflict-grievous-bodily-harm murder?"

We adopt the facts as set out by the Court of Special Appeals, as follows:

"Shortly before midnight on August 20, 2010, Julian Kelly was beaten, robbed, and shot by a group of men while on his way home from work. This criminal episode began when, according to witnesses, Kelly was surrounded by 'maybe . . . five' men who began 'kicking and punching' him, upon his refusal to surrender his backpack and necklace. After he was knocked to the ground, one of Kelly's assailants stood over him and shot him five times, three times in the torso and twice in the head, wounds from which Kelly died several weeks later.

Identified as one of Kelly's assailants, Jones was tried before a jury, in the Montgomery County circuit court, for his purported participation in Kelly's robbery and murder. At trial, the State advanced two different theories of the role Jones played in the perpetration of those crimes. The first theory alleged that Jones, although not a participant in the robbery and the beating, shot Kelly after mistaking him for someone else. The second suggested that Jones had, in fact, participated in both the robbery and the beating and had shot Kelly when Kelly had refused to relinquish his belongings. In response, Jones, who did not testify at trial, attempted to establish through the testimony of several witnesses that he had merely been a bystander to the incident and that it had been one of Kelly's assailants, not he, who had fired the fatal shots.

At the close of evidence, the court instructed the jury on first-degree murder, first-degree felony murder, second-degree murder with the *intent to inflict serious bodily harm*, armed robbery, robbery, and the use of a firearm in the commission of a felony or a crime of violence. With respect to first-degree felony murder, the court instructed the jury that, in order to convict Jones of that offense, it must find that Jones murdered Kelly 'during the commission' of an underlying felony and that, here, the underlying felony could have been either armed robbery, robbery, or assault in the first degree.

Section 2-201(a)(4) of the Criminal Law Article states that a murder 'is in the first degree' if it is 'committed in the perpetration of or an attempt to perpetrate' a number of enumerated felonies. Although robbery and armed robbery, two of the three offenses the court below included in its instructions, could underlie a finding of first-degree felony murder, first-degree assault cannot. Thus, both Jones and the State agree that that portion of the circuit court's instructions was an incorrect statement of the law.

The jury found Jones not guilty of first-degree murder, second-degree murder

–4–

*with the intent to inflict serious bodily harm*, robbery, and armed robbery. But, as previously noted, it was unable to reach a verdict on the charges of first-degree felony murder and the use of a handgun in the commission of a felony or a crime of violence. When Jones moved for a mistrial with respect to those charges, the court granted that motion.

The State then informed Jones of its intention to retry him on the two verdictless counts, that is, first-degree felony murder and the use of a handgun in the commission of a felony or a crime of violence. Jones responded by moving for a judgment of acquittal as to the first-degree felony murder charge, asserting that, since first-degree assault was not a 'predicate felony' for a charge of first-degree felony murder, his acquittal on the charges of robbery and armed robbery meant that there was no felony that could serve as the underlying offense for the charge of first-degree felony murder. While conceding in its opposition to Jones's motion that it could not retry Jones on first-degree felony murder, the State insisted that it could retry him on the charge of second-degree felony murder *based on first-degree assault* because, though first-degree assault is not an underlying felony for a charge of first-degree felony murder, it can serve as an underlying felony for a charge of second-degree felony murder.

After the court, at the hearing that ensued on Jones's motion, granted a judgment of acquittal as to first-degree felony murder, it turned to the State's request to retry Jones on the charge of second-degree felony murder based on *first-degree assault*. Jones asserted that the constitutional prohibition against double jeopardy barred the State from proceeding on such a charge. The circuit court, however, flatly rejected that claim. It stated that second-degree felony murder based on first-degree assault was a 'viable' charge as it arose 'out of the facts of this case' and because Jones had 'not been acquitted' of it or of the underlying offense of first-degree assault. Consequently, the court declared that 'double jeopardy would not bar the prosecution' of Jones on the charge of second-degree felony murder *based on first-degree assault*."

*Jones,* 222 Md. App. at 605-08, 114 A3rd at 259-60 (internal footnotes omitted).[5]

---

[5] We add some additional procedural history in this case. On January 17, 2014, Jones noted an interlocutory appeal to the Court of Special Appeals. In a reported opinion dated April 29, 2015, the Court of Special Appeals reversed and remanded, holding that "a subsequent prosecution on the charge of second-degree felony murder based (footnote continued…)

III.

We address first the State's jurisdictional argument presented in its supplemental brief, asserting that this Court does not have jurisdiction to reconsider *Roary v. State* in this case because this appeal comes before the Court pursuant to the collateral order doctrine as an interlocutory appeal. As such, the State argues, we are restricted narrowly in considering that Order, which does not include re-considering *Roary v State*, and that a question outside of our interlocutory jurisdiction cannot be appended to one that is within the Order.

Respondent argues that this Court has jurisdiction to reconsider *Roary v. State* because the question of whether second-degree felony murder predicated on first-degree assault is a cognizable crime in Maryland underlies—and its abrogation would solve—the double jeopardy question *sub judice*. In other words, the double jeopardy issues in this case exist because *Roary v. State* created them; whether assault with a firearm can serve as a predicate for second-degree felony murder is an issue of first impression; the question of whether to overrule *Roary v. State* is integral to the double jeopardy question; and its abrogation would resolve the double jeopardy issues that conferred jurisdiction in the first

on first-degree assault would . . . violate the prohibition against double jeopardy" because second-degree specific-intent murder, "the offense of which Jones was acquitted, and second-degree felony murder based on first-degree assault, the charge upon which the State now wishes to proceed, are the same offense for double jeopardy purposes. . . ." *Jones,* 222 Md. App. 600, 605, 619, 114 A.3d 256, 259, 267 (2015).

place.

We hold that this Court has jurisdiction to decide the issue embodied in the supplemental question raised by the Court: Should this Court reconsider the holding in *Roary v. State?* This Court has fundamental jurisdiction to overrule a prior decision of the Court, and has the *inherent authority* to consider an issue that is inextricably intertwined to the issue before it. *See Wynn v. State,* 388 Md. 423, 431-39, 879 A.2d 1097, 1102-07 (2005).

As we noted in *Wynn*, "[t]he concept of inherent authority, thus, is grounded in the understanding that courts possess certain powers in order to function as courts. Similarly, inherent authority is necessary to protect the role of the judiciary within the constitutional separation of powers." *Id.* at 433, 879 A.2d at 1103. The notion that a court is powerless to correct a prior legal principle and must decide a case based upon a principle it disagrees with is inconsistent with the inherent power the court possesses to review and to correct prior analyses as well as the development of the common law. The common law method is subject to judicial reappraisal and modification. Overruling a prior decision of this Court is likewise inherent in the common law method that is open to reappraisal. Under the circumstances presented herein, where the issue was created by *Roary v. State* and is *inextricably intertwined* with the appeal issues, this Court has the *inherent power* to overrule *Roary v. State,* a prior decision of this Court.

The Supreme Court of Wisconsin described the power that inheres in courts as follows:

> "In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers . . . . *'The inherent power of the court is the power to protect itself; the power to administer justice . . .; the power to promulgate rules for its practice; and the power to provide process where none exists. It is true that the judicial power of this court was created by the Constitution, but upon coming into being under the Constitution, this court came into being with inherent powers.'"*

*State v. Cannon,* 221 N.W. 603, 603-04 (Wisc. 1928) (*quoting In re Bruen*, 172 P. 1152, 1153 (Wash. 1918)) (emphasis added).

The State relies on *Rush v. State*, 403 Md. 68, 939 A.2d 689 (2008), for the proposition that this Court does not have jurisdiction to reconsider *Roary v. State* in this interlocutory appeal. In *Rush*, the State noted an interlocutory appeal when the suppression court granted Rush's motion to suppress a statement taken in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602 (1966). *Rush* involved the limits of the State's statutory right to an interlocutory appeal under § 12-302(c)(3) of the Courts and Judicial Proceedings Article, while the appeal *sub judice* is based upon the common law collateral order doctrine. The distinction is of consequence as the strictures of the statute are far more definite and finite than the doctrine applied here. The scope of the jurisdiction conferred is different. Beyond that fact, *Rush* involved an evidentiary matter, which raises different considerations, as we noted in *Neal v. State*, 272 Md. 323, 322 A.2d 887 (1974):

> "We do not share the view that a determination that double

–8–

jeopardy does or does not exist involves an exercise of discretion. To us, the defense of double jeopardy is *a liminal constitutional issue*, raised at the outset, before there is a trial. *It can in no way be compared to a finding that a defendant is not in fact indigent. Neither can it be analogized to questions involving the admissibility of evidence, raised during trial, even though constitutional issues are involved.*"

*Id.* at 326, 332 A.2d at 889 (emphasis added).

The cognizability of the charge of second-degree felony murder predicated on first-degree assault is part of the double jeopardy issue raised in Respondent's appeal. Respondent, by his double jeopardy question, raises a collateral issue to the merits of the underlying case, "contesting the very authority of the Government to hale him into court to face trial on the charge against him." Ordinarily, a question of whether the crime alleged is cognizable is independent of the merits of the case against respondent. For the double jeopardy question before us, however, whether the crime alleged is cognizable is *not* independent of the issue we must decide and it is inextricably intertwined with the double jeopardy question.

We analyze an *autrefois acquit* double jeopardy question using the *Blockburger* test—whether the elements of one crime are the same as those in another crime. *See Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932). The *Blockburger* analysis requires evaluation of the similarity of the elements of two criminal offenses. *State v. Ferrell*, 313 Md. 291, 298, 545 A.2d 653, 656 (1988). We break down a criminal charge to its elements and consider it in that form. *Id.* A question of whether one of those crimes, or sets of elements, is cognizable or not under the law, is essential to the *Blockburger*

analysis. If we evaluate one of the crimes and determine that it should not be a criminal offense in Maryland, then the test is completed and the threat of double jeopardy is relieved. If, as a result of our analysis, we reconsider whether or not a criminal offense should be allowed to proceed at all, that outcome is part of our double jeopardy analysis, and also stands.

This analysis is *sui generis* and will not open the floodgates, as the State suggests, to interlocutory appeals of all motions to dismiss based on grounds that a particular crime is not cognizable. Here, as noted, the issue we must decide is inextricably intertwined with the double jeopardy issue. The question of whether assault in the first-degree may serve as a predicate for second-degree felony murder as a cognizable crime is an integral part of the double jeopardy question before us. Petitioner's right to challenge the State's right to try him against being twice put to trial for the same offense includes inherent consideration of whether the offense alleged is one which could support the felony murder charge, particularly whether first-degree assault with a firearm may serve as a predicate for second-degree felony murder.

IV.

Both certiorari questions are predicated upon this Court's opinion in *Roary v. State,* 385 Md. 217, 867 A.3d 1095 (2005), holding that first-degree assault is a proper underlying felony to support a second-degree felony murder conviction. We held the following in *Roary v. State:*

> *"We hold, that an assault in the first-degree, when committed in a manner inherently dangerous to human life, as in this case, may be a predicate felony for second-degree felony-murder. Thus the trial court did not err in submitting to the jury second-degree felony murder based upon an assault in the first degree. We recognize that our relatively strict adherence to the common law felony-murder doctrine is not favored by a number of other States as explained *supra*; nothing in our case law or research, however, has persuaded us that the rule in Maryland should be otherwise."*

*Id.* at 236, 867 A.3d at 1106.

We take this opportunity to re-examine *Roary v. State,* to overrule it and to adopt the so-called "merger doctrine" in Maryland.[6] A common limitation of the application of the felony-murder doctrine is the merger doctrine. The merger doctrine, first conceived in the nineteenth century, bars the application of the felony-murder doctrine whenever the underlying felony is an integral element of the homicide. In other words, to support a charge of felony murder, the underlying felony must be independent of the homicide. *See Barnett v. State*, 783 So. 2d 927, 930 (Ala. Crim. App. 2000); *State v. Essman*, 403 P.2d 540, 545 (Ariz. 1965) (en banc); *People v. Chun*, 203 P.3d 425, 434-35 (Cal. 2009); *People v. Ireland*, 450 P.2d 580, 590-91 (Cal. 1969) (en banc); *State v. Clark*, 460 P.2d 586, 590 (Kan. 1969); *State v. Shock*, 68 Mo. 552, 561-62 (Mo. 1878); *State v. Hanes,* 729 S.W.2d 612, 617 (Mo. Ct. App. 1987); *People v. Moran*, 158 N.E. 35, 36 (N.Y. 1927).

Thus, because second-degree felony murder based upon first-degree assault, where

---

[6] The "merger doctrine" we adopt here today is different from the common law merger principle that applies in sentencing. *See Roary*, 385 Md. 217, 232 n. 14, 867 A.2d 1095, 1103 n. 14 (2005).

the killing does not arise separate from the assault, cannot be a predicate for second-degree

felony murder, we do not address whether trying respondent in a successive prosecution

for second-degree felony murder based upon first-degree assault violates his protection

embodied in the Double Jeopardy Clause of the United States Constitution, or the Maryland

common law doctrine of *autrefois acquit* or *autrefois convict.*[7] It goes without saying that

we need not address respondent's motion to dismiss,[8] or whether first-degree assault is an

inherently dangerous felony capable of serving as a predicate felony for second-degree

---

[7] Although respondent agrees with the result of the Court of Special Appeals in *Jones v. State*, 222 Md. App. 600, 114 A.3d 256 (2015), respondent and the State both disavow the Court's reasoning and analysis of the double jeopardy issue. Accordingly, although we affirm the judgment of the intermediate appellate court, we shall vacate that opinion.

[8] Jones moved to dismiss this appeal, contending that the prohibition on double jeopardy bars this appeal because the decision of the Court of Special Appeals acts as an "acquittal" as to second-degree felony murder predicated on first-degree assault, and thus "cannot be appealed or reviewed." Jones argues that the Court of Special Appeals' decision is an acquittal because that Court concluded that the prohibition on double jeopardy bars a prosecution for second-degree felony murder predicated on first-degree assault, as that crime and second-degree specific-intent murder "are the same offense for double jeopardy purposes." *Jones*, 222 Md. App. 600, 605, 114 A.3d 256, 259 (2015). Jones asserts that the Court of Special Appeals essentially concluded that the acquittal as to second-degree specific-intent murder was also an acquittal as to second-degree felony murder predicated on first-degree assault.

In light of our holding that first-degree assault cannot serve as a predicate for second-degree felony murder, we do not consider respondent's motion to dismiss. On the merits, were we to consider the motion, we would deny it. Simply put, the prohibition on double jeopardy does not bar our review in this case because the decision of the Court of Special Appeals is not an "acquittal." In other words, that Court's decision was not a "resolution . . . of some or all of the factual elements of the offense charged." *Giddins v. State*, 393 Md. 1, 19, 899 A.2d 139, 149 (2006) (*quoting Smith v. Massachusetts*, 543 U.S. 462, 468, 125 S.Ct. 1229, 1134, 160 L.Ed.2d 914, 923 (2005)).

–12–

felony murder, or whether first-degree assault with the intent to cause serious physical injury is a lesser included offense of second-degree intent to inflict grievous bodily harm murder, because first-degree assault can no longer serve as a predicate for second-degree felony murder when that assault arises out of the homicidal act causing the death of the victim.

We hold that, if the assaultive act causing the injury is the same act that causes the victim's death, the assault is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes. We realize that this view is inconsistent with *Roary v. State*. We therefore overrule that case, insofar as it holds that the assaultive act constituting willful injury and also causing the victim's death may serve as a predicate felony for felony-murder purposes. The rule of law we announce today in this case regarding the use of willful injury as a predicate felony for felony-murder purposes shall be prospective only and applicable to this case and those cases not resolved finally on direct appeal.

## V.

At common law, a person's conduct bringing about an unintended death in the commission or attempted commission of a felony was guilty of murder. Wayne R. LaFave, *SUBSTANTIVE CRIMINAL LAW* § 14.5(a) 444 (2nd ed. 2003). That rule is known as the felony-murder rule, intended to "deter dangerous conduct by punishing as murder a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did

–13–

not intend to kill." *Fisher*, 367 Md. at 262, 786 A.2d at 732. Underlying the doctrine is the recognition that in society's judgment, a felony committed intentionally that causes the death of another person is qualitatively more serious than an identical felony that does not. *See* David Crump & Susan Waite Crump, *In Defense of the Felony Murder Doctrine,* 8 HARV. J.L. & PUB. POL'Y 359, 363 (1985). To obtain a conviction for felony-murder in Maryland, the State must prove the underlying felony and that the death occurred during the perpetration or in furtherance of the felony. *Newton v. State*, 280 Md. 260, 269, 373 A.2d 262, 267 (1977). "Without proof of the underlying felony, there can be no conviction for felony murder." *Hook v. State*, 315 Md. 25, 32, 553 A.2d 233, 236 (1989).

Maryland Code Ann., Crim Law § 2-201 (2002; 2012 Repl. Vol, 2016 Supp.)[9] provides that certain forms of murder shall be murder in the first-degree. More particularly, § 2-204 provides in pertinent part, "a murder that is not in the first-degree under § 2-201 of this subtitle is in the second-degree." Maryland Code Ann., Crim Law § 2-204 (2002; 2012 Repl. Vol, 2016 Supp.). The statute does not create any new statutory crimes, but instead divides the crime of murder, as known at common law, into degrees, first and second-degree. *Jackson v. State*, 286 Md. 430, 435-36, 408 A.2d 711, 715 (1979); *State v. Frye*, 283 Md. 709, 712-13, 393 A.2d 1372, 1373-74 (1978); *Davis v. State*, 39 Md. 355, 374 (1874).

In Maryland, murder in the first-degree under § 2-201 is defined by statute as

---

[9] Unless otherwise indicated, all subsequent statutory references herein shall be to Md. Code Ann., Criminal Law Article.

–14–

follows:

> "(a)  In general -- A murder is in the first degree if it is:
>> (1)  a deliberate, premeditated, and willful killing;
>> (2)  committed by lying in wait;
>> (3)  committed by poison; or
>> (4)  committed in the perpetration of or an attempt to perpetrate:
>>> (i)  arson in the first degree;
>>> (ii)  burning a barn, stable, tobacco house, warehouse, or other outbuilding that:
>>>> 1.  is not parcel to a dwelling; and
>>>> 2.  contains cattle, goods, wares, merchandise, horses, grain, hay, or tobacco;
>>> (iii)  burglary in the first, second, or third degree;
>>> (iv)  carjacking or armed carjacking;
>>> (v)  escape in the first degree from a State correctional facility or a local correctional facility;
>>> (vi)  kidnapping under § 3-502 or § 3-503(a)(2) of this article;
>>> (vii)  mayhem;
>>> (viii)  rape;
>>> (ix)  robbery under § 3-402 or § 3-403 of this article;
>>> (x)  sexual offense in the first or second degree;
>>> (xi)  sodomy; or
>>> (xii)  a violation of § 4-503 of this article concerning destructive devices."

The felony-murder doctrine, imposing murder liability for some unintended killings in the course of some felonies, is part of Maryland law, and indeed, of almost every American jurisdiction.[10] *See* Guyora Binde, *Making the Best of Felony Murder*, 91 B.U.L.

---

[10] Hawaii, Kentucky, and Ohio have abolished felony-murder. W.E. Shipley, Annotation, *Judicial Abrogation of Felony-Murder doctrine*, 13 A.L.R.4th 1226. The Model Penal Code recommends elimination of felony-murder. Model Penal (footnote continued…)

REV. 403, 404 (2011). The doctrine is part of Maryland jurisprudence, both as a matter of common law and by statute. *See Fisher*, 367 Md. at 247-51, 786 A.2d at 724-26; § 2-201(a)(4). Nonetheless, while part of Maryland jurisprudence, and most American jurisdictions, the felony-murder doctrine has been described as "a highly artificial concept that deserves no extension beyond its required application." *People v. Phillips*, 414 P.2d 353, 360 (Cal. 1966), *overruled on other grounds by People v. Flood*, 957 P.2d 869, 882 n. 12 (Cal. 1998). *See also Campbell v. State*, 293 Md. 438, 451, 444 A.2d 1034, 1042 (1982); *People v. Aaron, 299* N.W. 2d 304, 312 (Mich. 1980); *Commonwealth ex rel Smith v Myers*, 261 A.2d 550, 555 (Pa. 1970).

In *Fisher*, this Court considered the question of whether "in Maryland, the crime of [second-degree] murder may be established under the [common law] felony-murder doctrine utilizing child abuse as the felony." 367 Md. at 246, 786 A.2d at 723. Concluding that child abuse of the character and degree described in the evidence of that case is inherently dangerous, we held that "the acts and omissions constituting the statutory felony of child abuse, proscribed by § 35C, but not included in §§ 408 through 410, are the basis, *under the circumstances of this case*, for applying the felony-murder doctrine." *Id.* at 225, 786 A.2d at 710 (emphasis added). We recognized that the felonies identified in the first-degree murder statute are not the exclusive felonies that may be a predicate for second-degree felony murder. *Id.* at 251, 786 A.2d at 726. We concluded that the felonies that

Code § 210.2 cmt. 6, at 37-39. *See also* Guyora Binde, *Making the Best of Felony Murder*, 91 B.U.L. REV. 403, 419 (2011).

would support a conviction for common law second-degree felony murder are not limited to those felonies that existed at common law but include those felonies sufficiently dangerous to life to justify application of the doctrine. *Id.* at 253-54, 786 A.2d at 727. Whether the predicate felony is considered "dangerous to life" is determined by the nature of the crime or by the manner in which it was perpetrated in a given set of circumstances. *Id.* at 263, 786 A.2d at 733. Finally, "[i]f the felonious conduct, under all of the circumstances, made death a foreseeable consequence, it is reasonable for the law to infer from the commission of the felony under those circumstances the malice that qualifies the homicide as murder." *Id.* at 262, 786 A.2d at 732.[11]

Following *Fisher,* in *Roary v. State*, this Court was presented with the question of whether first-degree assault is a viable underlying felony for common-law second-degree felony murder. In that case, Michael Roary and his three friends chased the victim, and dropped a boulder on his head twice. *Roary,* 385 Md. at 222, 867 A.2d at 1097. The victim later died as a result of those injuries. He was convicted of, *inter alia,* second-degree felony murder with first-degree assault as the predicate felony, involuntary manslaughter, and first and second-degree assault. *Id.* at 224, 867 A.2d at 1099. We held that first-degree assault may serve as a predicate felony for a second-degree felony murder conviction. *Id.* at 236,

---

[11] It is important to remember that *Fisher v. State*, 367 Md. 218, 786 A.2d 706 (2001), dealt with the offense of child abuse as the predicate felony for second-degree felony murder and not the use of a firearm. *Id.* One of the motivating forces in the *Fisher* analysis appears to be that without second-degree felony murder application, the homicide might go unpunished. *Id.*

867 A.2d at 1106. We expressly declined "to modify the common law of this State to adopt the so-called 'merger' doctrine." *Id.* at 222, 867 A.2d at 1098. We concluded, however, with the following qualifying statement:

> "Whether Maryland should or needs to adopt a similar modification to the felony-murder rule, however, need not be decided today as the facts of the case do not remotely raise the issue of mitigation."

*Id.* at 235, 867 A.2d at 1105. The instant case raises squarely the unintended and undesirable consequences of assault as a predicate for felony murder and calls out for this Court to reconsider the adoption of the merger doctrine, which we shall do.

Chief Judge Cardozo's discussion in *People v. Moran*, 158 N.E. 35, 36 (N.Y. 1927), of the necessity for an independent underlying felony has been cited and quoted often in the New York Court of Appeals and other discussions of the "merger doctrine." Moran was convicted of murdering a police officer. *Id.* at 36. The only theory presented to the jury for the murder charge was felony murder. In reversing, the court held that the felonious assault resulting in the death could not be the underlying felony for felony murder. *Id.* In an oft-quoted passage, the court explained as follows:

> "Homicide is murder in the first degree when perpetrated with a deliberate and premeditated design to kill, or, without such design, while engaged in the commission of a felony. To make the quality of the intent indifferent, it is not enough to show that the homicide was felonious, or that there was a felonious assault which culminated in homicide. *Such a holding would mean that every homicide, not justifiable or excusable, would occur in the commission of a felony, with the result that intent to kill and deliberation and premeditation would never be essential. The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the*

–18–

> *assault merged therein*, as, *e. g.*, robbery or larceny or burglary or rape."

*Id.* at 36 (internal citations omitted) (emphasis added).

The Supreme Court of California addressed the issue of whether assault with a deadly weapon could serve as the predicate felony for a felony-murder conviction in *People v. Ireland*, 450 P.2d 580 (Cal. 1969) (en banc). Ireland was charged with shooting and killing his wife. *Id.* at 582-83. Applying the "merger doctrine" and requiring an independent felony, the court explained as follows:

> "We have concluded that the utilization of the felony-murder rule in circumstances such as those before us extends the operation of that rule 'beyond any rational function that it is designed to serve.' To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law. *We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged.*"

*Id.* at 590 (internal citation omitted) (emphasis added). The California Supreme Court explained later the development of the "merger doctrine" as follows:

> "Prior to our decision in Ireland, the 'merger' doctrine had been developed in other jurisdictions as a shorthand explanation for the conclusion that the felony-murder rule should not be applied in circumstances where the only underlying (or 'predicate') felony committed by the defendant was *assault*. The name of the doctrine derived from the characterization of the assault as an offense that 'merged' with the resulting homicide. In explaining the basis for the merger doctrine,

–19–

courts and legal commentators reasoned that, because a homicide generally results from the commission of an assault, every felonious assault ending in death automatically would be elevated to murder in the event a felonious assault could serve as the predicate felony for purposes of the felony-murder doctrine. Consequently, application of the felony-murder rule to felonious assaults would usurp most of the law of homicide, relieve the prosecution in the great majority of homicide cases of the burden of having to prove malice in order to obtain a murder conviction, and thereby frustrate the Legislature's intent to punish certain felonious assaults resulting in death (those committed with malice aforethought, and therefore punishable as murder) more harshly than other felonious assaults that happened to result in death (those committed without malice aforethought, and therefore punishable as manslaughter). (See Note, *The Doctrine of Merger in Felony-Murder and Misdemeanor-Manslaughter* (1960) 35 ST. JOHNS L. REV. 109, 117; see also Crump & Crump, *In Defense of the Felony Murder Doctrine* (1985) 8 HARV. J. L. & PUB. POL'Y. 359, 379; Note, *Application of the Merger Doctrine to the Felony-murder rule in Texas: The Merger Muddle* (1990) 42 BAYLOR L. REV. 535; People v. Moran (1927) 246 N.Y. 100 [158 N.E. 35, 36–37] (opn. of Cardozo, C. J.).) One commentator explains that the merger rule applied to assaults is supported by the policy of preserving some meaningful domain in which the Legislature's careful graduation of homicide offenses can be implemented. (Crump & Crump*, In Defense of the Felony Murder Doctrine*, op. cit. supra, 8 HARV. J. L. & PUB. POL'Y. 359, 379.)."

*People v. Hansen*, 885 P.2d 1022, 1028 (Cal. 1994), *overruled on other grounds by People*

*v. Chun*, 203 P.3d. 425 (Cal. 2009).[12]

---

[12] *People v. Hansen* held that the offense of discharging a firearm at an inhabitable dwelling does not merge with a resulting homicide within the *Ireland* doctrine. 885 P.2d 1022, 1031 (Cal. 1994). *In People v. Chun*, the California Supreme Court reversed *Hansen*, holding that "[w]hen the underlying felony is assaultive in nature, such as a violation of section 246 or 246.3, we now conclude that the felony merges with the homicide and cannot be the basis of a felony-murder instruction. An 'assaultive' felony is one that involves a threat of immediate violent injury." 203 P.3d 425, 443 (Cal. 2009).

Along with New York and California, Kansas also expressed the concern that the use of felonious assault as a predicate for felony murder would result in an obliteration of the different grades of homicide. In *Fisher v. State*, 243 P. 291 (Kan. 1926), the Kansas Supreme Court rejected assault with a deadly weapon as a basis for a felony-murder conviction and embraced the merger rule, stating as follows:

> "This contention cannot be sustained. The effect of it would be to make any homicide, not excusable or justified, which by our statute, is defined to be manslaughter in any of the degrees or murder in the second degree, to constitute murder in the first degree. In other words, there could, under this interpretation of the statute, be no such thing as any lower degree of homicide than murder in the first degree."

*Id.* at 293; *see also State v. Branch*, 415 P.2d 766, 767 (Ore. 1966) (en banc) (observing that in order to preserve the distinctions between degrees of murder and manslaughter, courts have held that assault merges with the killing and cannot be the predicate for felony murder).

In the years since *Moran*, *Ireland, Fisher*, and *Branch*, many states considering this issue have adopted some version of the merger rule for first-degree assaults resulting in the death of the victim. *See Garrett v. State*, 573 S.W.2d 543, 545 (Tex. Crim. App. 1978) (noting that applying the felony-murder rule in such instances "has been rejected in the vast majority of jurisdictions throughout the United States where it is held that a felonious assault resulting in death cannot be used as the felony which permits application of the felony-murder rule to the resulting homicide."). *See generally* Robert L. Simpson, *Annotation, Application of Felony-Murder Doctrine Where The Felony Relied Upon Is an*

–21–

*Includible Offense with the Homicide*, 40 A.L.R. 3d 1341.

In *Roary v. State* we rejected the "merger doctrine" and held that first-degree assault with the intent to inflict serious physical injury was a viable predicate for second-degree felony murder. *Roary*, 385 Md. at 222, 867 A.2d at 1098. Today, we overrule *Roary v. State* and hereby join the majority of jurisdictions in this country which have adopted the "merger doctrine" in these circumstances.

We are ever mindful that an appellate court should not overrule a previous decision without a basis of changing conditions or serious judicial error in interpretation sufficient to justify deviation from the well-recognized doctrine of stare decisis. Nonetheless, every court recognizes that the rule of *stare decisis* is not ironclad or absolute. *Unger v. State,* 427 Md. 383, 417, 427 A.2d 242, 261-62 (2012). Courts recognize the power to decline to follow the doctrine when persuaded the prior decision is wrong. *Meyer v. State*, 445 Md. 648, 668-69, 128 A.2d 147, 159-60 (2015); *Thompson v. UBS Fin. Servs., Inc.*, 443 Md. 47, 58, 115 A.3d 125, 131 (2015); *Cure v. State*, 421 Md. 300, 320-322, 26 A.3d 899, 910-912 (2011); *Harris v. Board of Education*, 375 Md. 21, 59, 825 A.2d 365, 387-88 (2003); *State v. Kanaras*, 357 Md. 170, 184, 742 A.2d 508, 516 (1999); *Owens-Illinois v. Zenobia*, 325 Md. 420, 470-471, 601 A.2d 633, 657-58 (1992); *Townsend v. Beth Fair Shipyard*, 186 Md. 406, 417, 47 A.2d 365, 370 (1946).

The West Virginia Supreme Court explained cogently the application of the rule of *stare decisis* as follows:

> ". . . the rule is not in any sense ironclad, and the future and permanent good to the public is to be considered, rather than

–22–

any particular case or interest . . . . Precedent should not have an overwhelming or despotic influence in shaping legal decisions . . . . The benefit to the public in the future is of greater moment than any incorrect decision in the past. *Where vital and important public and private rights are concerned, and the decisions regarding them are to have a direct and permanent influence in all future time, it becomes the duty as well as the right of the court to consider them carefully, and to allow no previous error to continue, if it can be corrected.* The reason that the rule of *stare decisis* was promulgated was on the ground of public policy, and it would be an egregious mistake to allow more harm than good to accrue from it. Much, not only of legislation, but of judicial decision, is based upon the broad ground of public policy, and this latter must not be lost sight of."

*Adkins v. St. Francis Hosp.*, 143 S.E.2d 154, 163 (W. Va. 1965) (*quoting* Am & Eng. Ency., Law (1st Ed.) 36) (emphasis added).

Justice Stewart's argument urging the Court to overrule *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 82 S.Ct. 1328 (1970), is persuasive, noting that the Court is correct in overruling erroneous precedent and echoing Justice Frankfurter's belief that wisdom should not be discarded merely because it comes late. *Boys Market, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 255, 90 S.Ct. 1583, 1595 (1970) (Stewart, J., concurring). As Justice Powell stated "where it becomes clear that a wrongly decided case does damage to the coherence of the law, overruling is proper." Lewis F. Powell, Jr., *Stare Decisis and Judicial Restraint*, 47 WASH. & LEE L. REV. 281, 286 (1990). There is much scholarly support for the idea that it is better to correct an erroneous precedent than to perpetuate error. Richard Wasserman, in in his book on *stare decisis*, explained as follows:

"The liberal rule . . . is one which therefore allows for flexibility and growth; under its dictates precedents need not

> always be followed. The doctrine . . . allows for both definite expectation and innovations . . . . And if the judge should conclude that the prior cases were wrongly decided—that the precedents are incorrect—then the cases should be openly overruled. For if the rule of *stare decisis* demanded that precedents be followed regardless of the amount of good or harm produced in society by so doing, then this rule might be open to the objection that certainty is being procured at too great a price."

Richard A. Wasserstrom, *THE JUDICIAL DECISION* 50-51 (1961) (internal citations omitted).

*See also* John R. Schmidhauser, *CONSTITUTIONAL LAW IN THE POLITICAL PROCESS* 505-07 (1963); Karl Llewellyn, *The Bramble Bush* 68 (1951); David L. Shapiro, *Essays Commemorating the One Hundredth Anniversary of the Harvard Law Review: In Defense of Judicial Candor*, 100 HARV. L. REV. 731, 734 (1987).

With these considerations in mind, we find good and sufficient cause in favor of overruling *Roary v. State*, which held that first-degree assault was a viable predicate for second-degree felony murder. *Roary,* 385 Md. at 222, 867 A.2d at 1098. The holding of *Roary v. State*, that assault in the first-degree may serve as a predicate for second-degree felony murder is wrong in that it expands unwisely felony murder and elevates practically all shooting deaths in Maryland to second-degree felony murder, thereby effectively eliminating the crime of manslaughter. The instrumentality of death in *Roary* was a boulder. The instrumentality here is a gun. Hence, we overrule it before that case creates more undesirable consequences for the criminal law in Maryland, as pointed out in the dissent in *Roary*. *Id.* at 255, 867 A.2d at 1117 (Raker, J., dissent). We join the large majority of our sister states and conclude that the better and more legally sound approach

is to adopt the "merger rule" and require that for second-degree felony murder, the inherently dangerous predicate felony must be one that is independent of the homicide. We arrive at this conclusion for the following reasons.

Time has shown us that *Roary v. State* was decided wrongly for several reasons. It was contrary to our own jurisprudence which has stated often that the felony-murder rule should not be expanded. *See Campbell*, 293 Md. at 451-52, 444 A.2d at 1042 (stating that "[w]e are persuaded that the felony-murder doctrine should not be extended beyond its traditional common law" and expressly declining to extend the felony-murder doctrine to situations involving lethal acts of non-felons because such an extension would not achieve the purpose of the rule).

Further, contrary to the trend around the country, and established Maryland jurisprudence limiting the scope of felony murder, "the court's decision [in *Roary v. State*] unwisely and unnecessarily extends the scope of second-degree common-law felony murder in Maryland." Marcia J. Simon, Note, *An Inappropriate and Unnecessary Expansion of Felony Murder in Maryland*, 65 MD. L. REV. 992 (2006). Shortly after *Roary* was announced by this Court, the decision was criticized strongly in the Maryland Law Review. Marcia J. Simon pointed out the flaws and errors in the Court's reasoning, noting as follows:

> "In reaching its decision, the court rejected the merger doctrine, which precludes felonious assault as a predicate for felony murder. Instead, the court mistakenly relied on a deterrence rationale that emphasized conduct rather than intent. The court's deterrence justification was flawed, however, because it incorrectly presumed that rejecting the

merger doctrine would deter dangerous assaults. Moreover, by focusing on conduct rather than intent, the court failed to consider individual culpability and proportionality, two cornerstones of modern criminal law. This misguided approach renders the statutory punishment scheme for homicide largely ineffective and will, as it did in *Roary*, lead to illogical, disproportionate punishments. Finally, the court's decision to allow assault as a predicate to felony murder permits prosecutors to circumvent the requirement to prove intent to kill and subsumes much of Maryland's second-degree murder and manslaughter law into felony murder.

The court should have instead followed the lead of a number of other states and adopted the merger doctrine to preclude assault as a predicate for felony murder. In doing so, the court would have imposed a reasonable limitation on the felony-murder doctrine while preserving an appropriate punishment scheme for homicide in Maryland."

*Id.* at 992-93 (internal citations omitted).

VI.

As we have noted, second-degree felony murder is an unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in § 2-201. This Court has recognized that felony murder should not be enlarged and we have, in fact, restricted its application. In *Fisher*, we noted that "*in order to ameliorate the harshness of the strict common law felony murder doctrine, many jurisdictions limit the predicate felonies to those that are dangerous to human life*" 367 Md. at 254, 786 Md. at 727. In order to maintain the integrity of the different levels of culpability of murder and manslaughter and to ameliorate its perceived harshness, today we adopt the "merger doctrine" and we hold that first-degree assault that results in the

–26–

victim's death merges with the homicide and therefore cannot serve as an underlying felony for the purposes of the felony murder rule. *Roary v. State*, 385 Md. 217, 867 A.2d 1095 (2005), is overruled. First-degree assault, either intent to inflict serious physical injury or assault with a firearm, cannot, as a matter of law, serve as the underlying felony to support felony murder. The assaultive act merges into the resultant homicide, and may not be deemed a separate and independent offense that could support a conviction for felony murder. Where the only felony committed (apart from the murder itself) was the assault upon the victim that resulted in the death of the victim, the assault merges with the killing and cannot be the predicate for felony murder nor relied upon by the State as an ingredient of a felony murder.

**OPINION OF THE COURT OF SPECIAL APPEALS VACATED, JUDGMENT AFFIRMED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR A NEW TRIAL ONLY ON THE CHARGE OF USE OF A HANDGUN IN THE COMMISSION OF A CRIME OF VIOLENCE. COSTS TO BE PAID BY MONTGOMERY COUNTY.**

Argued: January 12, 2016
Reargued: September 9, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 52

September Term, 2015

_____

STATE OF MARYLAND

v.

TYSHON LETEEK JONES

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Battaglia, Lynne A.
    (Senior Judge,
     Specially Assigned)
Raker, Irma S. (Senior Judge,
    Specially Assigned),

JJ.

_____

Dissenting Opinion by Watts, J., which Greene
and Battaglia, JJ., join

_____

Filed: February 24, 2017

Respectfully, I dissent. "Adherence to precedent must . . . be the rule rather than the exception if litigants are to have faith in the even-handed administration of justice in the courts." Benjamin N. Cardozo, The Nature of the Judicial Process 34 (1921).

In this case, I disagree with the Majority's conclusion that this Court has jurisdiction to overrule Roary v. State, 385 Md. 217, 222, 867 A.2d 1095, 1098 (2005), in which this Court held that "first-degree assault is a proper underlying felony to support a second-degree felony-murder conviction[,]" and I ultimately disagree with the Majority's decision to overrule Roary. See Maj. Slip Op. at 2, 7.

## Jurisdiction to Overrule Roary

A review of the parties' contentions, the procedural history of the case, and relevant case law leads to the inescapable conclusion that, under the circumstances of this appeal, this Court does not have jurisdiction to overrule Roary. The State contends that this Court lacks jurisdiction to overrule Roary because the collateral-order doctrine does not permit an appeal for failure to state an offense prior to final judgment in a case. The State explains that, if Jones had moved to dismiss in the circuit court on the ground that second-degree felony murder predicated on first-degree assault was not a crime—i.e., if Jones had moved to dismiss for failure to state an offense—then the issue of overruling Roary would not be "collateral"; instead, the issue would go to the heart of guilt or innocence. In other words, the State asserts that the collateral-order doctrine is inapplicable because the denial of a motion to dismiss on such a ground—i.e., the allegation that the Indictment failed to properly charge an offense—is reviewable only after a final judgment.

Jones counters that this Court has jurisdiction to reconsider Roary because

according to Jones, <u>Roary</u> is the cause of the double jeopardy issue in this case, and overruling <u>Roary</u> would resolve this case's double jeopardy issues. Both parties appear to agree that the appeal on the double jeopardy issue arose under the collateral-order doctrine. Simply put, with respect to the issue of Court's jurisdiction to overrule <u>Roary</u>, I agree with the State.

Pursuant to Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 12-301, generally, an appellate court has jurisdiction only over a final judgment. <u>See</u> <u>Harris v. State</u>, 420 Md. 300, 312, 22 A.3d 886, 892 (2011) ("Generally, in Maryland[,] appellate jurisdiction may arise only after entry of a final judgment." (Citing CJP § 12-301)). "There are three well-identified, but infrequently sanctioned, limited exceptions to the final judgment rule"; where one of these exceptions applies, an appellate court has jurisdiction over an interlocutory order—*i.e.*, an order that is not a final judgment. <u>Id.</u> at 312-14, 22 A.3d at 893-94 (citation and ellipsis omitted). The three exceptions are: (1) appeals that a statute other than CJP § 12-301 expressly allows; (2) appeals of orders that trial courts enter pursuant to Maryland Rule 2-602, not disposing of the entire action; and (3) appeals pursuant to the common-law collateral-order doctrine. <u>See</u> <u>id.</u> at 313-14, 22 A.3d at 893-94.

I agree with the parties that the only basis for the instant appeal is the common-law collateral-order doctrine.[1] The instant appeal does not arise out of a final judgment. Jones

---

[1]The instant appeal cannot be based on the two exceptions to the final judgment rule other than the collateral-order doctrine. The instant appeal does not involve Maryland Rule 2-602, which is part of Title 2 (Civil Procedure--Circuit Court) and applies only to

has not been convicted of any crime. Two charges remain pending against Jones: second-degree felony murder and use of a firearm in the commission of a crime of violence or felony.[2] The jury hung on, and the circuit court declared a mistrial as to, these two charges. Accordingly, there was no final judgment.

Under the collateral-order doctrine, an appellate court has jurisdiction over an order that: (1) conclusively determines the disputed question; (2) resolves an important issue; (3) resolves an issue that is completely separate from the merits of the action; and (4) would be effectively unreviewable on appeal from a final judgment. See Harris, 420 Md. at 316, 22 A.3d at 895. This Court has stressed that "[t]he collateral order doctrine is a very narrow exception to the final judgment rule, and each of its four requirements is very strictly applied in Maryland. In particular, the fourth prong, unreviewability on appeal, is not satisfied except in extraordinary situations." Id. at 316, 22 A.3d at 895 (citation omitted).

In this case, if Jones's motion to dismiss had been based on the argument that there is no such crime as second-degree felony murder predicated on first-degree assault—*i.e.*, the argument that Roary is no longer good law—then the denial of the motion to dismiss

---

civil cases. Nor does the instant appeal involve a statute other than CJP § 12-301 that allows appeals. The two such statutes that arise most often are CJP §§ 12-302(c) and 12-303. As does Maryland Rule 2-602, CJP § 12-303 applies only to civil cases. See CJP § 12-303 ("A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case[.]"). CJP § 12-302(c) allows the State, not the defendant, to appeal certain orders in a criminal case. See CJP § 12-302(c)(1) ("In a criminal case, the State may appeal as provided in this subsection."). Here, Jones, not the State, was the appellant; the circuit court denied the motion to dismiss, and Jones appealed.

[2]The charge for second-degree felony murder remains because the circuit court granted Jones's motion for judgment of acquittal as to first-degree felony murder, and found that, at a new trial, the State could prosecute Jones for second-degree felony murder predicated on first-degree assault.

would not have satisfied the collateral-order doctrine.  First, the <u>Roary</u> issue would not have been completely separate from the merits of the action; indeed, if there is no such crime as second-degree felony murder predicated on first-degree assault, then Jones is necessarily not guilty of that charge.  Second, in stark contrast to the double jeopardy issue, the <u>Roary</u> issue does not implicate a right to be free from a second trial.

Stated otherwise, raising the <u>Roary</u> issue in the motion to dismiss would have been the equivalent of moving to dismiss the indictment for failure to state an offense; and, significantly, in <u>Abney v. United States</u>, 431 U.S. 651, 663 (1977), the Supreme Court concluded that such a motion to dismiss does not satisfy the collateral-order doctrine for two reasons:

> First, an order denying a motion to dismiss an indictment for failure to state an offense is plainly not 'collateral' in any sense of that term; rather it goes to the very heart of the issues to be resolved at the upcoming trial.  Secondly, the issue resolved adversely to [the defendant] is such that it may be reviewed effectively, and, if necessary, corrected if and when a final judgment results.

<u>Id.</u>

The double jeopardy issue does not encompass the <u>Roary</u> issue.  It would be wrong to hold otherwise. When a court decides a double jeopardy issue, the court decides whether two crimes are "the same offense" for purposes of double jeopardy.  The court does not inquire as to whether one of those crimes is actually a crime in the first place.  To the contrary, a double jeopardy analysis presumes that the two crimes are, indeed, crimes.  If there is a challenge to the existence or propriety of one crime, that challenge does not constitute a double jeopardy issue.  Indeed, a double jeopardy issue like the instant one can arise only if the State charges the defendant with at least two crimes and engages in at least

two consecutive prosecutions. By contrast, a defendant's claim that there is no such thing as a particular crime can arise even if the State charges the defendant with only one crime in only one prosecution. The double jeopardy issue clearly does not encompass the question of whether second-degree felony murder predicated on first-degree assault is actually a crime or whether Roary should be overruled.

In short, the two questions are distinct. To use algebraic terms, the question of "Are X and Y the same?" does not encompass the question of "Does X exist?"—*i.e.*, the first question does not include the second question.

In this case, the double jeopardy question is: "Is second-degree specific-intent murder the same offense as second-degree felony murder predicated on first-degree assault?" The Roary question is: "Is there such a crime as second-degree felony murder predicated on first-degree assault?" The double jeopardy question asks whether Jones should be tried again for the same offense; the Roary question does not.

It would be incorrect to hold that the double jeopardy question depends on the answer to the Roary question. Assuming hypothetically, purely for argument's sake, that Roary was wrongly decided, and that there is no such crime as second-degree felony murder predicated on first-degree assault, then the result is not that double jeopardy bars a new trial of Jones on that charge. Indeed, the reason why a new trial would not occur in that circumstance has nothing to do with double jeopardy; the reason is not that Jones has already been acquitted of a crime, but instead that the offense in question is not a crime at all, and thus could be neither properly charged nor the subject of any trial—whether it is Jones's first trial, second trial, or whichever number trial. In other words, the outcome of

the Roary question has nothing to do with double jeopardy.

Although the motion to dismiss would not have satisfied the collateral-order doctrine if it had been based on the Roary issue, the reality is that the motion to dismiss was, in fact, based on the double jeopardy issue; thus, the circuit court's denial of the motion to dismiss satisfied the collateral-order doctrine. Accordingly, the issue becomes: May this Court, on its own initiative, append the Roary issue to a properly-taken appeal, where that issue could not have been the subject of a properly-taken appeal?

The State is correct in advocating that Rush v. State, 403 Md. 68, 939 A.2d 689 (2008) is instructive on this issue. In Rush, id. at 74, 939 A.2d at 692, this Court held that a criminal defendant "did not have the right to cross-appeal, [but] she did have the right, in the State's appeal, to defend the ruling of the trial court on alternative grounds." Law enforcement officers had arrested the defendant, Mirandized her, and interviewed her. See id. at 74-78, 939 A.2d at 692-94. During the interview, the defendant made inculpatory statements. See id. at 78, 939 A.2d at 694. The defendant moved to suppress the inculpatory statements on two alternative grounds: (1) that the advisements that a law enforcement officer provided to her did not comport with Miranda; and (2) the statements were involuntary because the law enforcement officer obtained them through threats and inducement. See Rush, 403 Md. at 78, 939 A.2d at 694-95. The trial court granted the motion to suppress only on the ground that the advisements that the law enforcement officer provided to the defendant did not comport with Miranda; the trial court expressly noted that it was not granting the motion to suppress on the ground of involuntariness. See id. at 79, 939 A.2d at 695.

The State appealed the trial court's grant of the motion to suppress pursuant to what is now CJP § 12-302(c)(4)(i), which states in pertinent part that, in certain criminal cases, "the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Maryland Constitution, or the Maryland Declaration of Rights." See Rush, 403 Md. at 80, 939 A.2d at 695. The defendant noted a "cross-appeal," and argued on appeal that the circuit court erred in ruling that her statements should not be suppressed on the ground of involuntariness. Id. at 80, 939 A.2d at 695.

The Court of Special Appeals reversed the trial court's grant of the motion to suppress, holding that the advisements that the law enforcement officer provided to the defendant comported with Miranda. See Rush, 403 Md. at 80, 939 A.2d at 695-96. The Court of Special Appeals held that it had jurisdiction to consider the voluntariness issue that the defendant raised in her "cross-appeal," and concluded that the defendant's statements were involuntary. See id. at 80, 939 A.2d at 696. The defendant filed a petition for a writ of *certiorari*, and the State filed a cross-petition for a writ of *certiorari*; this Court granted the petition and the cross-petition. See id. 80-81, 939 A.2d at 696.

Addressing the Miranda issue first, this Court agreed with the Court of Special Appeals that the advisements that the law enforcement officer provided to the defendant comported with Miranda. See Rush, 403 Md. at 89, 939 A.2d at 701. Turning to the voluntariness issue, this Court noted that the threshold question was whether the Court of Special Appeals had jurisdiction to consider the defendant's "cross-appeal." See id. at 95, 939 A.2d at 705. We observed that, in previous cases, we had "narrowly construed any

- 7 -

grant of appellate authority" and had "strictly construed the right to appeal[.]" Id. at 98, 939 A.2d at 706 (citations omitted). This Court concluded that what is now CJP § 12-302(c)(4) "does not confer appellate jurisdiction to hear a defendant's cross-appeal. Rather, the statute clearly limits the right to appeal from an interlocutory order to the State; the defendant is free to appeal from the final judgment." Id. at 101, 939 A.2d at 708.

That said, this Court went on to determine that, "[a]lthough [the defendant] could not file a 'cross-appeal,' she was entitled to raise the voluntariness issue in the State's appeal, in order to defend the suppression ruling on an alternative ground raised by [the defendant] and ruled on by the" trial court. Id. at 103, 939 A.2d at 709. This Court ultimately concluded that the record was inadequate to make a determination as to whether the defendant's statements were voluntary. See id. at 104, 939 A.2d at 710. This Court remanded the case to the Court of Special Appeals with instructions to reverse the grant of the motion to suppress and remand to the trial court for further proceedings. See id. at 104, 939 A.2d at 710.

Notably, not every member of this Court agreed with the holding that the defendant could raise the voluntariness issue in the State's appeal. In a concurring and dissenting opinion, Judge Irma S. Raker agreed with the Majority that the advisements that the law enforcement officer provided to the defendant comported with Miranda; however, Judge Raker disagreed with the Majority as to the appealability of the voluntariness issue. See Rush, 403 Md. at 105, 939 A.2d at 710 (Raker, J., concurring and dissenting). Specifically, Judge Raker stated that she "agree[d] with the State that [the defendant could ]not appeal the [trial c]ourt's finding that portions of her statement were voluntary." Id. at 105, 939

- 8 -

A.2d at 710 (Raker, J., concurring and dissenting). Judge Raker explained: "The ruling was interlocutory, and because there exists no statute or right to appeal such an order, her claim may be raised in an appeal from a final judgment, and not within the State's appeal." Id. at 105, 939 A.2d at 710 (Raker, J., concurring and dissenting). In other words, contrary to the position taken in this case, Judge Raker would not have permitted the appending of the issue of voluntariness to the State's appeal of a trial court's grant of the motion to suppress on the basis of a failure to comply with Miranda.

Rush provides no support for the idea that this Court may address the Roary issue in this appeal. In Rush, the defendant moved to suppress on two grounds, and the trial court granted the motion to suppress on one of those grounds. The State was empowered by statute—specifically, what is now CJP § 12-302(c)(4)—to appeal the trial court's grant of the motion to suppress. Significantly, this Court held that the defendant was entitled to argue in favor of upholding the trial court's grant of the motion to suppress on both of the grounds that the defendant raised in the motion to suppress.

This appeal is vastly different. Here, Jones moved to dismiss the charge for second-degree felony murder predicated on first-degree assault on the ground of double jeopardy. Jones did **not**, in the motion to dismiss, contend that there is no such crime as second-degree felony murder predicated on first-degree assault. In other words, Jones did not raise the Roary issue in the motion to dismiss. The circuit court denied the motion to dismiss, and Jones appealed. Jones was empowered by the collateral-order doctrine to appeal the circuit court's denial of the motion to dismiss only because the motion to dismiss was based on double jeopardy.

The distinction between the double jeopardy issue and the <u>Roary</u> issue is crucial, and materially distinguishes this appeal from <u>Rush</u>. In <u>Rush</u>, regardless of whether the trial court granted the motion to suppress on the <u>Miranda</u> issue, the voluntariness issue, or both, the State would have had a right to appeal the trial court's grant of the motion to suppress. By contrast, here, Jones had a right to appeal the trial court's denial of the motion to dismissed only because Jones moved dismiss on the ground of double jeopardy. If Jones had raised only the <u>Roary</u> issue in the motion to dismiss—*i.e.*, simply argued that there is no such crime as second-degree felony murder predicated on first-degree assault—then Jones would have lacked a right to appeal, because the circuit court's denial of the motion to suppress would not have satisfied the collateral-order doctrine.

Also significant is the fact that, in <u>Rush</u>, this Court concluded that the defendant—*i.e.*, the appellee, the non-appealing party, in whose favor the trial court ruled—was entitled to argue in favor of **upholding** the trial court's grant of the motion to suppress on both of the grounds that the defendant raised in the motion to suppress. By contrast, here, Jones is the appellant—the appealing party, whose motion to dismiss the circuit court denied. In contrast to the defendant in <u>Rush</u>, Jones is not seeking to uphold a trial court's ruling. To the contrary, Jones seeks **reversal** of the circuit court's denial of the motion to suppress.

The reason why this fact is important is demonstrated by the following quotation in <u>Rush</u>, 403 Md. at 103, 939 A.2d at 709: "[A] reviewing court may **uphold** the final judgment of a lower court on any ground adequately shown by the record[.]" (Emphasis added) (citation and internal quotation marks omitted). Although neither <u>Rush</u> nor this appeal involves a final judgment because both cases arise out of interlocutory appeals, this

quotation from Rush shows that an appellate court may **uphold** a trial court's ruling on any ground that the record shows. The quotation from Rush is conspicuously silent on whether an appellate court may reverse a trial court's ruling on any ground that the record shows.

This is appropriate, given that, generally, appellate courts consider whether to reverse a trial court's ruling only on the grounds that are raised by the appealing party—*i.e.*, the party who is aggrieved by the trial court's ruling. Appellate courts do not comb the record, looking for grounds for reversal that the appellant did not raise. Or, as Judge Charles E. Moylan, Jr. once so eloquently put it: "[A]ppellate courts do not range forth, like knights errant, seeking flaws in trials. Their quest is far more modest. They monitor a trial for the limited purpose of seeing if the trial judge committed error." Austin v. State, 90 Md. App. 254, 265, 600 A.2d 1142, 1147 (1992).

Jones attempts to distinguish Rush on the ground that Rush arose out of an interlocutory appeal that a statute allowed, whereas this case arises out of an interlocutory appeal that the collateral-order doctrine allows. Jones fails to explain why this difference in procedural histories leads to the result that Rush is not instructive here or that the distinction matters at all.

Equally unpersuasive is Jones's reasoning that this Court has jurisdiction to consider the Roary issue because overruling Roary would obviate the need to consider the double jeopardy issue. As discussed above, appellate jurisdiction is not automatic; it must arise from one of the four specific bases for appealability, such as the collateral-order doctrine. Jones provides no case law, and I know of none, that stands for the proposition that, where Issue A is properly before an appellate court, the appellate court may consider a different

- 11 -

legal question, Issue B, solely by virtue of the circumstance that resolving Issue B in a certain way would render Issue A moot.

Even more troubling is the circumstance that this Court, not Jones, raised the Roary issue by *sua sponte* ordering the parties to brief it. Just as the parties cannot confer appellate jurisdiction on an appellate court by agreement, nor can an appellate court confer upon itself appellate jurisdiction to consider a particular issue.

The Majority relies on Wynn v. State, 388 Md. 423, 879 A.2d 1097 (2005) for the proposition that this Court has the inherent authority to "consider an issue that is inextricably intertwined to the issue before it." Maj. Slip Op. at 7. Despite the Majority's reliance on it, Wynn, in actuality, stands for the opposite proposition—that this Court lacks such authority. In Wynn, 388 Md. at 424-25, 879 A.2d at 1098, this Court held that a trial court erred in dismissing charges in response to the State's violation of a pre-trial scheduling order. The trial court declared a mistrial as to certain charges due to a deadlocked jury, and gave the State thirty days to decide whether to reprosecute the defendant. See id. at 426, 879 A.2d at 1099. The State did not file anything to indicate that the State planned to reprosecute the defendant. See id. at 427, 879 A.2d at 1100. Forty-five days after the trial court declared a mistrial, the trial court conducted a status conference, at which the defendant moved to dismiss. See id. at 426, 879 A.2d at 1099. The trial court granted the motion to dismiss on the ground that the State failed to file a line. See id. at 427-28, 879 A.2d at 1100. The State appealed, and the Court of Special Appeals reversed, holding that the trial court lacked the authority to dismiss the charges. See id. at 428, 879 A.2d at 1100. This Court agreed and affirmed. See id. at 425, 879 A.2d

at 1098.

This Court rejected the defendant's contention that, based a trial court's inherent authority to control its docket, the trial court in <u>Wynn</u> had the power to dismiss the charges based on the State's failure to comply with the scheduling order. <u>See id.</u> at 430-31, 879 A.2d at 1101-02. Significantly, this Court explained: "Inherent authority should be applied only when necessary to the performance of the judicial function." <u>Id.</u> at 429, 879 A.2d at 1100-01. This Court also observed: "Courts across the country, including this Court, have maintained that inherent authority should be recognized and yet employed rarely." <u>Id.</u> at 435, 879 A.2d at 1104. This Court held that a trial court's inherent authority to control its docket does not outweigh the State's discretion to determine whether to prosecute. <u>See id.</u> at 443, 879 A.2d at 1109.

<u>Wynn</u> establishes that a court may not invoke its inherent authority except in the rare instance that it is necessary to do so, and <u>Wynn</u> does not address at all an appellate court's use of inherent authority to confer jurisdiction upon itself. This Court's holding in <u>Wynn</u> concerning inherent authority does not in any way support the Majority's decision to append the <u>Roary</u> issue to the instant appeal.

Although the Majority states that this Court has the inherent authority to consider <u>Roary</u> because the <u>Roary</u> issue is "inextricably intertwined" with the issues that the parties raised on appeal, as explained above, the <u>Roary</u> issue is not interwoven with the double jeopardy issue; the question of whether two crimes are the same offense for purposes of double jeopardy is not the same as the question of whether one of those crimes is really a crime at all.

- 13 -

In sum, given that Jones would have been unable to appeal the circuit court's denial of the motion to suppress under the collateral order doctrine had the motion been based on the ground that second-degree felony murder predicated on first-degree assault is not an offense, this Court lacks jurisdiction over the issue. The Roary issue and the double jeopardy issue are not the same issue, and jurisdiction for the appeal is not conferred by the inherent authority of the Court.

**Application of the Principle of *Stare Decisis* to Roary**

Although I would hold that this Court lacks jurisdiction to overrule Roary, I will, nonetheless, address the merits of the Majority's decision with respect to Roary. "Under [the principle of] *stare decisis*, absent extremely narrow exceptions, an appellate court does not overrule its precedent." Thompson v. UBS Fin. Servs., Inc., 443 Md. 47, 57-58, 115 A.3d 125, 131 (2015) (citation and internal quotation marks omitted). There are two such extremely narrow exceptions. The first is that "an appellate court need not adhere to [the principle of] *stare decisis* where the appellate court's precedent was clearly wrong and contrary to established principles." Id. at 58 n.5, 115 A.3d at 131 n.5 (citation and internal quotation marks omitted). The second is that an appellate court need not adhere to the principle of *stare decisis* where the appellate court's "precedent has been rendered archaic and inapplicable to modern society through the passage of time and evolving events." Id. at 58, 115 A.3d at 131 (brackets, citation, and internal quotation marks omitted).

Neither of the exceptions to the principle of *stare decisis* applies to Roary. Significantly, in his supplemental brief, Jones explicitly concedes that the first exception to the principle of *stare decisis*—i.e., that the precedent in question was clearly wrong and

contrary to established principles—does not apply to <u>Roary</u>. Specifically, Jones states:

> [Jones] does not believe that *Roary* is clearly wrong or contrary to established principles. Although [Jones] agrees with the *Roary* dissent and maintains that this Court should adopt the merger doctrine to resolve the problems [that] *Roary* has created in his case, **the *Roary* decision was not legally incorrect. In *Roary*, the Court considered an issue of first impression in Maryland. Additionally, the *Roary* Court issued its decision amongst many different approaches to the merger issue in many different States**, and Maryland ultimately joined a minority of [S]tates in rejecting the merger doctrine.

(Emphasis added) (citations omitted). Jones is absolutely correct in conceding that <u>Roary</u> was not clearly wrong. The Majority, however, takes just the opposite approach, and concludes that <u>Roary</u> "was decided wrongly." Maj. Slip Op. at 25. It speaks volumes that Jones does not endorse the same basis for overruling <u>Roary</u> as adopted by the Majority.

In describing the principle of *stare decisis*, the Majority quotes a fifty-two-year-old case from West Virginia, <u>Adkins v. St. Francis Hosp. of Charleston</u>, 143 S.E.2d 154, 163 (W. Va. 1965). <u>See</u> Maj. Slip Op. at 22-23. In <u>Adkins</u>, 143 S.E.2d at 162, the Supreme Court of Appeals of West Virginia stated that a case may be overruled "when it clearly is apparent that an error has been made o[r] that the application of an outmoded rule, due to changing conditions, results in injustice[.]" But, in <u>Adkins</u>, the Supreme Court of Appeals of West Virginia does not apply the same standard that this Court has used—that a case may be overruled where the case was clearly wrong and contrary to established principles, or has been rendered archaic and inapplicable to modern society through the passage of time and evolving events. <u>See</u> <u>Thompson</u>, 443 Md. at 58 & n.5, 115 A.3d at 131 & n.5. Significantly, the language from <u>Adkins</u> that the Majority quotes does not contain the terms "clearly wrong" or "clearly erroneous," but instead simply speaks of whether a case is

- 15 -

merely "bad" or "incorrect."  See Maj. Slip Op. at 22-23; Adkins, 143 S.E.2d at 163 ("The benefit to the public in the future is of greater moment than any incorrect decision in the past."); id. ("[I]t becomes the duty as well as the right of the court to consider [precedent] carefully, and to allow no previous error to continue, if it can be corrected.").

Immediately after quoting Adkins, the Majority relies on other non-binding sources, such as law review articles and books.  See Maj. Slip Op. at 23-24.  As to the principle of *stare decisis*, the Majority uses citations of Maryland law in only two instances.  First, the Majority provides a string cite of Maryland cases after the sentence: "Courts recognize the power to decline to follow the doctrine [of *stare decisis*] when persuaded the prior decision is wrong."  Maj. Slip Op. at 22.  This sentence fails to indicate that the standard for overruling a case is not whether the case is merely "wrong"; rather, the standard is whether the case is "clearly wrong and contrary to established principles."  The Majority's only other citation of Maryland law as to the principle of *stare decisis* is a citation of Unger v. State, 427 Md. 383, 417, 48 A.3d 242, 261-62 (2012) after the sentence: "Nonetheless, every court recognizes that the rule of *stare decisis* is not ironclad or absolute."  Maj. Slip Op. at 22.

Ultimately, as to overruling Roary, the Majority states: "With these considerations in mind, we find good and sufficient cause in favor of overruling *Roary*[.]"  Maj. Slip Op. at 24.  The phrase "good and sufficient cause" appears nowhere in the Majority's discussion of the authorities it relies upon to define the concept of *stare decisis*.  Thus, it is unclear from what source the Majority has drawn the phrase "good and sufficient cause" as the standard for overruling Maryland case law.  What is clear is that this Court has never used

- 16 -

"good and sufficient cause" as a standard for overruling precedent.

In sum, applying the principle of *stare decisis* established in Maryland case law leads to the conclusion that Roary was not clearly wrong and contrary to established principles; and, in the past twelve years, there has not been a societal change that has rendered archaic the principle that second-degree felony murder can be predicated on first-degree assault.

This court's holding in Roary was based on sound principles of law, and is as valid today as it was in 2005. In Roary, 385 Md. at 222-23, 867 A.2d at 1097-98, the defendant and multiple co-conspirators beat a person; during the beating, two of the defendant's co-conspirators dropped a boulder on the person's head, and the person died as a result of his injuries. A jury convicted the defendant of, among other crimes, second-degree felony murder predicated on first-degree assault. See id. at 224, 867 A.2d at 1099. On appeal, the defendant urged this Court to adopt a "merger" doctrine, under which second-degree felony murder could not be predicated on first-degree assault because the murder theoretically "merges" with the assault. See id. at 225, 232-33, 867 A.2d at 1099, 1103-04.

This Court noted that it had previously been established that second-degree felony murder could be predicated on a felony that is "sufficiently dangerous to life[,]" as "determined by the nature of the [felony] or by the manner in which [the felony] was perpetrated in a given set of circumstances." Id. at 229, 867 A.2d at 1101 (quoting Fisher v. State, 367 Md. 218, 263, 786 A.2d 706, 733 (2001)) (emphasis and internal quotation marks omitted). In Fisher, 367 Md. at 263, 786 A.2d at 733, this Court held, among other

things, that a felony could serve as a predicate for second-degree felony murder if: (1) the felony was inherently dangerous to human life; or (2) under a particular case's circumstances, the defendant committed the felony in a manner that was dangerous to human life. In Fisher, id. at 226, 786 A.2d at 711, two defendants were convicted of second-degree felony murder predicated on child abuse. On appeal, the defendants challenged the convictions' validity on three alternative grounds. See id. at 246-47, 786 A.2d at 723-24. First, the defendants contended that, under Maryland law, there was no such crime as second-degree felony murder, as no statute provided for such a crime—in contrast to first-degree felony murder, for which certain statutes enumerated the possible predicate felonies. See id. at 246-47, 786 A.2d at 723. Second, the defendants argued that, even if second-degree felony murder was cognizable under Maryland law, only common law crimes, as opposed to statutory ones, could serve as predicate felonies. See id. at 247, 786 A.2d at 723. Third, the defendants asserted that, even if statutory crimes could serve as predicate felonies, only crimes that were inherently dangerous to human life could serve as predicate felonies. See id. at 247, 786 A.2d at 723-24.

In Fisher, id. at 247, 263, 786 A.2d at 724, 733, this Court rejected all three of the defendants' contentions. This Court held that second-degree felony murder is cognizable under Maryland law because the statutes that enumerated the predicate felonies for first-degree felony murder simply established that a murder that was committed during one of those felonies was first-degree murder; the statutes did not supersede the common law felony-murder doctrine. See id. at 250-51, 786 A.2d at 725-26. This Court held that statutory crimes could serve as predicate felonies for second-degree felonies because few

courts, if any, had limited felony murder to common law predicate felonies, and this Court was "not persuaded to adopt" such a limitation. Id. at 253-54, 786 A.2d at 727. This Court held that a felony could serve as a predicate for second-degree felony murder if: (1) the felony was inherently dangerous to human life; or (2) under a particular case's circumstances, the defendant committed the felony in a manner that was dangerous to human life. See id. at 263, 786 A.2d at 733. Accordingly, this Court concluded that the convictions for second-degree felony murder predicated on child abuse were valid. See id. at 263, 786 A.2d at 733. To the extent that this Court overrules Roary, the Court essentially overrules Fisher.

In Roary, this Court also observed that, in Deese v. State, 367 Md. 293, 296, 786 A.2d 751, 752 (2001), this Court had repeated the principle that second-degree felony murder could be predicated on "any . . . inherently dangerous felony [that is] not enumerated in the first[-]degree murder statute[.]" Roary, 385 Md. at 228, 867 A.2d at 1101. This Court issued Deese, 367 Md. 293, 786 A.2d 751, on the same day on which this Court issued Fisher, 367 Md. 218, 786 A.2d 706. In Deese, 367 Md. at 296, 786 A.2d at 752, as in Fisher, 367 Md. at 246-47, 786 A.2d at 723-24, the defendant was convicted of second-degree felony murder predicated on child abuse, and argued on appeal that second-degree felony murder was not cognizable under Maryland law. Citing Fisher, this Court reaffirmed that second-degree felony murder is cognizable under Maryland law. See Deese, 367 Md. at 296, 786 A.2d at 752.

In Roary, 385 Md. at 230, 867 A.2d at 1102, turning to the issue before it, this Court held: "Based on the standard [that] we enunciated in *Fisher* and reaffirmed in *Deese*, first-

- 19 -

degree assault is a proper underlying felony to support a second-degree felony-murder conviction." (Footnote omitted). This Court concluded that first-degree assault not only was inherently dangerous in the abstract, but also was committed in a dangerous way under the circumstances of Roary. See Roary, 385 Md. at 230, 867 A.2d at 1102 ("[F]irst-degree assault is dangerous to human life. The nature of the crime . . . , . . . which 'creates a substantial risk of death,' is undoubtedly dangerous to human life. Furthermore, the manner in which the crime was committed in this instance . . . is also clearly dangerous to human life."). Thus, this Court expressly declined to adopt the "merger" doctrine. See id. at 225, 867 A.2d at 1099.

This Court acknowledged that courts in other States had adopted the "merger" doctrine, but noted that "Maryland is unique in that[,]" since colonial times, felony murder has remained a common law crime, as opposed to a statutory one. Id. at 231-32, 867 A.2d at 1102-03. This Court also observed that, in Maryland, "[t]he harshness of the [felony-murder] rule has been ameliorated by limiting its application to those felonies that are dangerous to human life[,] either because of their inherent nature or by the manner in which the felony is perpetrated[.]" Id. at 231, 867 A.2d at 1103.

After a review of cases in which courts in other States had adopted the "merger" doctrine, we "recognize[d] that our relatively strict adherence to the common law felony-murder doctrine [was] not favored by a number of other States[,] as explained *supra*; nothing in our case law or research, however, [] persuaded us that the rule in Maryland should be otherwise." Id. at 236, 867 A.2d at 1106. We concluded that, instead of "limit[ing] the scope of the [felony-murder] doctrine's application to only those underlying

felonies that are independent of the resulting death[,]" "the better policy is for the law to provide an additional deterrent to the perpetration of felonies [that], by their nature or the attendant circumstances, create a foreseeable risk of death." Id. at 236, 867 A.2d at 1106 (citing Fisher, 367 Md. at 256, 786 A.2d at 728-29). Thus, when deciding Roary, we were aware that courts in other States had adopted the "merger" doctrine, but we determined that adopting the "merger" doctrine in Maryland would be at odds with both our precedent and the goal of deterring felonies that are dangerous to human life.

In addressing the scope of second-degree felony murder in Roary, this Court was not required to interpret a constitutional provision, but instead was required to interpret the common law—which the General Assembly has the power to supersede by statute at any time. See Polakoff v. Turner, 385 Md. 467, 481-82, 869 A.2d 837, 846 (2005) ("[C]ertain statutory enactments may alter the common law."); see also Julian v. Buonassissi, 414 Md. 641, 677, 997 A.2d 104, 126 (2010) (A statute "is not intended to change the common law absent an express, specific declaration to do so." (Citation and internal quotation marks omitted)). It has been twelve years since this Court issued Roary, yet, notably, the General Assembly has not amended CR § 2-204 (Murder in the Second Degree) to provide that second-degree felony murder cannot be predicated on first-degree assault. In Pye v. State, 397 Md. 626, 635, 919 A.2d 632, 637 (2007), this Court unequivocally stated: "[C]onsistent with the [General Assembly]'s awareness of our cases, we have been reluctant to overrule our prior decisions where it is likely that the [General Assembly], by its inaction, indicates its adoption, or at least acceptance, of the interpretation reflected in the opinion[.]" (Citation omitted). Given that the General Assembly has not exercised its

authority to supersede <u>Roary</u> by statute, it is especially inappropriate for the Majority to overrule <u>Roary</u> here.

Judge Cathy Cochran of the Court of Criminal Appeals of Texas, made a cogent point in <u>Lawson v. State</u>, 64 S.W.3d 396, 396-97, 400-01 (Tex. Crim. App. 2001) (Cochran, J., concurring), in which Judge Cochran agreed with the majority of the Court of Criminal Appeals of Texas that an assault may serve as a predicate for felony murder. In a concurring opinion, joined by three other judges, Judge Cochran explained:

> The concern [behind the "merger" doctrine] was that every aggravated assault that resulted in a death would then be subject to prosecution as a murder. True enough, if the actor commits an act clearly dangerous to human life which causes the person's death. That is precisely the rationale of the felony murder rule. But unlike involuntary manslaughter, **not every aggravated assault results in death.** If manslaughter could constitute the underlying felony in a felony murder, then every single manslaughter case would be automatically upped to felony murder. The offense of manslaughter itself would be obviated. That is neither logical nor legal. But not every instance of aggravated assault, injury to a child, criminal mischief, etc. ends in death. Not every instance of these offenses is the result of an act that is clearly dangerous to human life. Not every instance of these offenses would automatically be upped to felony murder. **Use of these offenses as the basis of a felony murder prosecution do not pose the same logical and legal problem of merger that involuntary manslaughter has always been recognized, both at common law and in felony murder statutes, as posing.**

<u>Id.</u> at 400-01 (Cochran, J., concurring) (emphasis added) (footnote omitted).

Echoing the concern that was discussed in <u>Lawson</u>, 64 S.W.3d at 400 (Cochran, J., concurring), here, the Majority is concerned with the idea that, under <u>Roary</u>, potentially every first-degree assault that results in the victim's death would be a felony murder, and, according to the Majority, this is not a desirable outcome. <u>See</u> Maj. Slip Op. at 24-25. In <u>Roary</u>, 385 Md. at 236, 867 A.2d at 1106, however, this Court made a deliberate policy

- 22 -

decision to recognize second-degree felony murder predicated on first-degree assault to deter violent assaults that result in death. Nothing in Maryland has changed with respect to violent assaults in the twelve years since Roary except, perhaps, that such assaults occur more frequently, and that, with a new constituency of the Court, the Majority holds differently on the question of whether to recognize second-degree felony murder predicated on first-degree assault as a valid offense.

Interestingly, although conceding that Roary was not clearly wrong and contrary to established principles, Jones contends that Roary has been superseded by significant changes in the law or facts because applying Roary to deaths by shooting would remove the distinction between felony murder and specific-intent murder. As we explained in Michelle L. Conover v. Brittany D. Conover, ___ Md. ___, ___ A.3d ___, No. 79, Sept. Term 2015, 2016 WL 5462631, at *8 & n.10 (Md. July 7, 2016), the principle that an appellate court may overrule precedent that "has been superseded by significant changes in the law or facts" is synonymous with the principle that an appellate court may overrule precedent that "has been rendered archaic and inapplicable to modern society through the passage of time and evolving events." (Citations and internal quotation marks omitted). In his supplemental brief, Jones essentially contended that Roary is archaic, but was not clearly wrong and contrary to established principles.

At oral argument, however, in response to questions about whether his position was that Roary was clearly wrong or that Roary was archaic, Jones's counsel repeated his concession that Roary had been not decided incorrectly. Jones's counsel argued that, although Roary was not wrong in that it was contrary to another law, Roary has a

- 23 -

"fundamental flaw" in that it allows "every murder to be a felony murder."[3]  Jones's

counsel theorized that this Court should overrule Roary because the case is "not practical."

Jones's counsel's request to overrule Roary because it is not "practical" is

unfounded in law.  In several cases, this Court has repeated the well-established principle

that, under the doctrine of *stare decisis*, we may overrule our precedent only if at least one

of the following circumstances exists: (1) our precedent is clearly wrong and contrary to

established principles; or (2) our precedent has been rendered archaic and inapplicable to

modern society through the passage of time and evolving events—*i.e.*, our precedent has

been superseded by significant changes in the law or the facts.  See Thompson, 443 Md. at

58 & n.5, 115 A.3d at 131 & n.5; Waine, 444 Md. at 700, 122 A.3d at 299; Conover, 2016

WL 5462631, at *8 & n.10; DRD Pool Serv., Inc. v. Freed, 416 Md. 46, 64, 5 A.3d 45, 55-

56 (2010).  It is simply not the law that we may overrule our precedent on the ground that

we believe our precedent not to be "practical."[4]

To the extent that Jones argues that Roary is archaic, nothing could be further from

the truth.  Roary's specific purpose was to deter violent assaults that result in death.

---

[3]Presumably, Jones's counsel meant to assert that, under Roary, every first-degree assault that results in the victim's death would be a felony murder.

[4]In Houghton v. Forrest, 412 Md. 578, 587, 989 A.2d 223, 228-29 (2010), this Court stated: "[I]f experience demonstrates that it is unrealistic or unwise to enforce a rule in the form expressed by this Court, then it may be modified for practical reasons."  (Citing Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 854-55 (1992)).  In turn, in Casey, 505 U.S. at 854, while discussing *stare decisis*, the Supreme Court stated: "[W]e may ask whether the rule has proven to be intolerable simply in defying practical workability[.]" (Citation omitted).  In Houghton, 412 Md. at 588, 989 A.2d at 229, this Court declined a party's request to overrule certain precedents; thus, this Court's reference to "practical reasons" was *dicta*.

Today—twelve years after this Court issued <u>Roary</u> in 2005— deterring violent assaults that result in death is more important than ever. According to the Baltimore Sun, in 2015, Baltimore had more homicides per capita than ever before. In 2016, Annapolis, our State's capital, had more homicides than ever before.[5] Far from archaic, <u>Roary</u> is more beneficial to the public interest than ever before—yet, the Majority elects to overrule <u>Roary</u> and strip the State of an important tool in prosecuting homicides.

Indeed, the Majority essentially adopts the dissenting opinion in <u>Roary</u>—of which the majority of this Court in <u>Roary</u> was necessarily aware, and declined to follow. The Majority does not rely on any changed societal circumstance in support of the Majority's decision to overrule <u>Roary,</u> nor does the majority establish that the holding in <u>Roary</u> was clearly wrong.

Respectfully, a review of the majority opinion demonstrates that it is simply a rewrite of the dissenting opinion in <u>Roary</u>. In their respective discussions of the subject of the "merger" doctrine, both the majority opinion and the <u>Roary</u> dissent discuss <u>People v. Moran</u>, 158 N.E. 35, 36 (N.Y. 1927), <u>People v. Ireland</u>, 450 P.2d 580, 582-83, 590 (Cal. 1969) (en banc), <u>State v. Fisher</u>, 243 P. 291, 293 (Kan. 1926), <u>State v. Branch</u>, 415 P.2d 766, 767 (Or. 1966) (en banc), <u>Garrett v. State</u>, 573 S.W.2d 543, 545 (Tex. Crim. App. 1978), and Robert L. Simpson, Annotation, Application of Felony-Murder Doctrine Where The Felony Relied Upon Is an Includible Offense with the Homicide, 40 A.L.R. 3d 1341

---

[5]<u>See</u> Kata Amara, Annapolis homicide rates soar, WBAL-TV 11 (Oct. 3, 2016), available at http://www.wbaltv.com/news/annapolis-homicide-rates-soar/41939246 [https://perma.cc/JS5N-CDSH].

(2004). See Maj. Slip Op. at 18-22; Roary, 385 Md. at 251-53, 867 A.2d at 1114-16 (Raker, J., dissenting). Thus, the majority opinion is not based on any new authorities or developments in the law that would lead to a determination that Roary was clearly wrong.

The Majority cites the Roary dissent after the sentence: "Hence, we overrule [Roary] before that case creates more undesirable consequences for the criminal law in Maryland, as pointed out in the dissent." Maj. Slip Op. at 24. Both the Majority and the Roary dissent state that most other jurisdictions to consider the issue have adopted the "merger" doctrine. See Maj. Slip. Op. at 25; Roary, 385 Md. at 253, 867 A.2d at 1115. Both the Majority and the Roary dissent assert that Roary constitutes an improper extension of the felony-murder doctrine. See Maj. Slip Op. at 25-26; Roary, 385 Md. at 250, 867 A.2d at 1114. Thus, the rationale used by the Majority to overrule Roary was known by this Court at the time it issued Roary, but the Court declined to follow the dissent's view.

The Majority reasons that Roary was "contrary to our own jurisprudence which has stated often that the felony-murder rule should not be expanded." Maj. Slip Op. at 25. After this sentence, the Majority cites Campbell v. State, 293 Md. 438, 451, 444 A.2d 1034, 1042 (1982), in which this Court stated: "We are persuaded that the felony-murder doctrine should not be extended beyond its traditional common law limitation." As the Majority notes, in Campbell, id. at 451, 444 A.2d at 1042, this Court made this statement in the context of holding that the felony-murder doctrine does not apply where a defendant commits a lethal act that is neither a felony nor "in furtherance of a common design." (Footnote omitted). Campbell does not stand for the proposition that it was improper for this Court to hold in Roary that assault can serve as a predicate for felony murder.

- 26 -

The Majority approvingly cites, and quotes a length, a 2006 Maryland Law Review Article that was critical of Roary. See Maj. Slip Op. at 25-26 (quoting Marcia J. Simon, Note, An Inappropriate and Unnecessary Expansion of Felony Murder in Maryland, 65 Md. L. Rev. 992-93 (2006)). At that time, the law review article's author was a law student. In any event, it is not a basis for overruling a case that someone, perhaps even another judge, expresses disagreement with the case's outcome. Otherwise, anytime an opinion of this Court were criticized, it would be subject to being overruled.

At oral argument, Jones's counsel asserted: "Nothing is lost if Roary is overruled. The other theories of second-degree murder already cover what Roary proscribes." This argument is circular—and, indeed, meaningless—because it is premised on the assumption that Jones is correct about the ultimate issue before the Court—whether second-degree specific-intent murder and second-degree felony murder predicated on first-degree assault are the same offense. If, in fact, second-degree specific-intent murder and second-degree felony murder predicated on first-degree assault are different offenses—and they are, because, as discussed below, our precedent establishes that "substantial risk of death" is not synonymous with death being "the likely result"—then the State is losing the ability to prosecute defendants for deaths that arise from conduct that does not rise to the level of second-degree specific-intent murder. For example, a defendant may use a knife to stab a victim in the toe, and the victim may bleed to death as a result of the wound. Under such circumstances, it could be argued that the defendant did not commit second-degree specific-intent murder because: (1) the defendant did not intend to kill the victim; and (2) death is not "the likely result" of stabbing someone in the toe, which does not contain a

vital organ. Certainly, however, the defendant committed second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury, as the defendant created a substantial and foreseeable—but not necessarily likely or very probable—risk of death. Thus, contrary to Jones's assertion, the State does "lose" the ability to obtain convictions for certain violent assaults resulting in death by virtue of overruling <u>Roary</u>.

The Majority spends much time discussing cases in which courts in other jurisdictions have adopted the "merger" doctrine. <u>See</u> Maj. Slip Op. at 18-21. However, when this Court decided <u>Roary</u>, it was aware that "most [S]tates considering this issue have adopted some version of the merger rule for first degree assaults resulting in the death of the victim." <u>Roary</u>, 385 Md. at 253, 867 A.2d at 1115 (Raker, J., dissenting) (citations omitted).

The Majority does not mention that there are also States that rejected the "merger" doctrine. For example, in <u>State v. Harris</u>, 421 P.2d 662, 664 (Wash. 1966) (en banc), the Supreme Court of Washington concluded: "In light of the distinctions made in our own statutes, we see no reason why we should adopt the . . . 'merger rule[.]'" Later, in <u>State v. Thompson</u>, 558 P.2d 202, 205 (Wash. 1977) (en banc), the Supreme Court of Washington declined to overrule <u>Harris</u>, observing that the legislature had not superseded <u>Harris</u> in the ten years since the Court issued it. And, in <u>State v. Wanrow</u>, 588 P.2d 1320, 1320-21 (Wash. 1978) (en banc), the Supreme Court of Washington again declined to overrule <u>Harris</u>, observing that adopting the "merger" doctrine "would be an unwarranted and insupportable invasion of the legislative function in defining crimes." Decades after

*Thompson*, 558 P.2d 202, in <u>In re Pers. Restraint of Andress</u>, 56 P.3d 981, 982 (Wash. 2002), <u>as corrected</u> (Oct. 29, 2002), <u>as amended on denial of reconsideration</u> (Mar. 14, 2003), in a 5-4 decision, in light of an amendment by the State's legislature to the second-degree felony murder statute, the Supreme Court of Washington adopted the "merger" doctrine and held that assault cannot serve as a predicate for felony murder. It is worth observing that it has been twelve years since this Court issued <u>Roary</u>, and the General Assembly has not superseded it by statute.

Another case that is apropos here is <u>State v. Trott</u>, 289 A.2d 414, 419 (Me. 1972), in which the Supreme Judicial Court of Maine declined to adopt the "merger" doctrine. The Court acknowledged that it had "found favor in some jurisdictions[,]" but observed that the "merger" doctrine had "never been adopted or even considered in" Maine. <u>Id.</u> Ultimately, the Court "decline[d] to consider such an **abrupt departure from our prior decisional law**[.]" <u>Id.</u> (emphasis added).

In <u>Johnson v. State</u>, 4 S.W.3d 254, 258 (Tex. Crim. App. 1999), the Court of Criminal Appeals of Texas decided against adopting a general "merger" doctrine; adopted the "merger" doctrine only to the extent that manslaughter could not serve as a predicate for felony murder; and concluded that assault may serve as a predicate for felony murder. Later, in <u>Lawson</u>, 64 S.W.3d at 401 (Cochran, J., concurring), Judge Cochran explained that allowing assault to serve as a predicate for felony murder does "not pose the same logical and legal problem of merger that involuntary manslaughter has always been recognized, both at common law and in felony murder statutes, as posing."

That other States may or may not have adopted the "merger" doctrine is not a basis

for overruling <u>Roary</u>. This Court was aware that there were other States that had adopted the "merger" doctrine when it decided <u>Roary</u>. Simply put, as Jones has conceded, <u>Roary</u> is not clearly wrong. In refusing to adopt the "merger" doctrine in <u>Roary</u>, far from making a clearly wrong decision, this Court made a well-grounded decision about the law concerning felony murder in Maryland, and nothing has changed in the last twelve years to undermine the soundness of that decision.

**The Merits**

Having discussed the lack of any basis to overrule <u>Roary</u>, I will address the issue that this Court was asked to decide: whether, where a jury acquits a defendant of second-degree specific-intent murder and hangs on first-degree felony murder, and the trial court declares a mistrial as to first-degree felony murder, the prohibition on double jeopardy bars the State from prosecuting the defendant for second-degree felony murder predicated on first-degree assault. Faced with this issue, I would conclude that the State may prosecute Jones for second-degree felony murder predicated on first-degree assault. Specifically, I would conclude that second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury does not have all of the same elements as second-degree specific-intent murder, and that second-degree felony murder predicated on first-degree assault with a firearm does not have all of the same elements as second-degree specific-intent murder, as the former has the unique element of use of a firearm.

**Required Evidence Test: Second-Degree Specific-Intent Murder and Second-Degree Felony Murder Predicated on First-Degree Assault**

In <u>Abeokuto v. State</u>, 391 Md. 289, 353, 893 A.2d 1018, 1055 (2006), this Court

explained that, under the "required evidence test," Crime A is a lesser-included offense of Crime B where "all of the elements of [Crime A] are included in [Crime B], so that only [Crime B] contains [at least one] distinct element[.]" (Citation omitted). Accordingly, neither Crime A nor Crime B is a lesser-included offense of the other crime where each crime "contains an element [that] the other does not[.]" Id. at 353, 893 A.2d at 1055 (citation omitted).

The Maryland Criminal Pattern Jury Instruction on second-degree specific-intent murder, where neither justification nor mitigation is at issue, states in pertinent part:

> [T]o convict the defendant of second[-]degree [specific-intent] murder, the State must prove: (1) that the defendant caused the death of (name); and (2) that the defendant engaged in the deadly conduct either with the intent to kill or with the intent to inflict such serious bodily harm that **death would be the likely result**.

MPJI-Cr 4:17(B) (emphasis added) (paragraph breaks and underlining omitted).

The Maryland Criminal Pattern Jury Instruction on second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury states in pertinent part:

> [T]o convict the defendant of second[-]degree felony murder [predicated on first-degree assault with the intent to cause serious physical injury], the State must prove: (1) that [the defendant] [another participating in the crime with the defendant] committed the crime of first[-]degree assault [with the intent to cause serious physical injury]; (2) that [the defendant] [another participating in the crime] killed (name); and (3) that the act resulting in the death of (name) occurred during the first[-]degree assault [with the intent to cause serious physical injury]. To convict the defendant of first[-]degree assault [with the intent to cause serious physical injury], the State must prove: (1) that the defendant intentionally caused serious physical injury to (name); and (2) that the injury was not [consented to by (name)] [legally justified]. For second[-]degree felony murder, serious physical injury means injury that creates a **substantial and foreseeable risk of death**.

MPJI-Cr 4:17.7.2(A) (emphasis added) (some brackets in original) (paragraph breaks and underlining omitted).

Direct comparison of the elements of the offenses—second-degree specific-intent murder and second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury—guided by Thornton v. State, 397 Md. 704, 919 A.2d 678 (2007), leads to the conclusion that the two forms of murder share only one element: that the defendant—or, as to second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury, the defendant or a co-participant—caused the victim's death. The mental state that is required for second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury is subsumed by second-degree specific-intent murder's unique element of intent to kill or inflict such serious bodily harm that death would be the likely result. In short, second-degree specific-intent murder has all of the elements of first-degree assault with the intent to cause serious physical injury, plus a unique element: intent to kill or inflict such serious bodily harm that death would be the likely result. Accordingly, second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury is a lesser-included offense of second-degree specific-intent murder.

Although the elements of one offense are included in the other, the intent elements of second-degree specific-intent murder and second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury are different. Second-degree felony murder predicated on first-degree assault with the intent to cause serious

physical injury requires merely that the defendant "intentionally caused serious physical injury[,]" which is "injury that creates a substantial and foreseeable risk of death." MPJI-Cr 4:17.7.2(A). By contrast, second-degree specific-intent murder requires that the defendant have "the intent to kill or [] the intent to inflict such serious bodily harm that death would be the likely result." MPJI-Cr 4:17(B). It is possible for a defendant to have an intent to cause injury that creates a substantial and foreseeable risk of death without having an intent to inflict such serious bodily harm that death would be the likely result.

I disagree with the position of Jones and the Court of Special Appeals, see Jones, 222 Md. App. at 618, 114 A.3d at 266, that "intent to inflict such serious bodily harm that death would be the likely result" is the equivalent of "intent to cause injury that creates a substantial and foreseeable risk of death."[6] Contrary to the interpretation of Jones and the Court of Special Appeals, "substantial risk of death" is not synonymous with "death would be the likely result." "Likely" means "having a high probability of occurring[,]" or "very probable[.]" Likely, Merriam-Webster, http://www.merriamwebster.com/dictionary/

---

[6]Jones and the Court of Special Appeals disagree on the issue of whether second-degree specific-intent murder is a lesser-included offense of second-degree felony murder predicated on first-degree assault. The Court of Special Appeals reasoned that second-degree specific-intent murder is a lesser-included offense of second-degree felony murder predicated on first-degree assault because the latter form of murder has the "additional element" of first-degree assault. Jones, 222 Md. App. at 619, 114 A.3d at 266. At oral argument, Jones disagreed with the Court of Special Appeals's reasoning that there was a "greater/lesser relationship[,]" and instead posited that the two forms of murder were "the same offense." In any event, Jones and the Court of Special Appeals agree that "intent to inflict such serious bodily harm that death would be the likely result" is the equivalent of "intent to cause serious physical injury." As discussed above, I disagree and conclude that second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury is a lesser-included offense of second-degree specific-intent murder—not the other way around, as the Court of Special Appeals reasoned.

likely [https://perma.cc/A7EQ-4AJV]. If death is **the** likely result, then death is very probable—*i.e.*, the chance that death will result is greater than 50%. By contrast, "substantial" means "considerable in quantity[.]" Substantial, Merriam-Webster, http://www.merriam-webster.com/dictionary/substantial [https://perma.cc/8ZMT-JXLP]. If there is a substantial risk of death, then the risk of death is merely "considerable"—not necessarily "likely" or "very probable."

As explained earlier, the following hypothetical illustrates how there can be a "substantial risk of death" even though death is not "the likely result." A defendant wants to severely injure a victim without killing the victim. In other words, the defendant intends to cause a serious, but non-life-threatening, injury to the victim. Accordingly, the defendant uses a knife to stab the victim in the toe. The victim bleeds to death as a result of the wound. Under such circumstances, it could be argued that the defendant did not commit second-degree specific-intent murder because: (1) the defendant did not intend to kill the victim; and (2) death is not "the likely result" of stabbing someone in the toe, which does not contain a vital organ. Certainly, however, the defendant committed second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury, as the defendant created a substantial and foreseeable—but not necessarily likely or very probable—risk of death.

This conclusion is compelled by <u>Thornton</u>, 397 Md. at 709-10, 919 A.2d at 680-81, in which this Court held that a trial court erred at a bench trial at which second-degree specific-intent murder was at issue by presuming as a matter of law—as opposed to merely inferring—that, because a defendant thrust a knife into a victim, the defendant intended to

- 34 -

inflict such serious bodily harm that death would be the likely result.  In <u>Thornton</u>, <u>id.</u> at

720, 919 A.2d at 687, the defendant contended that the trial court erred by "equating intent

to do [serious] bodily harm (second-degree [specific-intent] murder) with intent to do

serious physical injury (first-degree assault)[.]"  This Court agreed with the defendant's

premise that "[t]he requisite mental state for [second-degree specific-intent murder] is

distinct from the requisite mental state for [first-degree] assault[.]"  <u>Id.</u> at 728, 919 A.2d at

692.  This Court explained the difference between the two mental states as follows:

> "[S]erious physical injury" means injury [that] "[c]reates a substantial risk of
> death."  "Serious physical injury" constitutes a **broad** statutory concept
> that[,] by definition[,] covers physical injury that **may or may not cause a
> victim's death**.  This differs from [second-degree] murder, and not only in
> the ultimate result where the victim dies.  A person is guilty of [second-
> degree] murder *only* if he or she has the requisite intent (and malice) to cause
> such severe harm that death would be *the* **likely result, not merely a
> possible result**.

<u>Id.</u> at 730, 919 A.2d at 693 (bolding added) (italics and third alteration in original).  In

<u>Thornton</u>, <u>id.</u> at 730, 919 A.2d at 693, this Court illustrated the difference between the two

mental states with the following hypothetical, which is similar to the above hypothetical

that involves a knife: "[A defendant] directs a knife at the victim's finger, intending to

inflict serious bodily harm[;] the finger is severed[;] and, unknown to the [defendant], the

victim is a hemophiliac,[7] and bleeds to death[.]" (Citation omitted).  This Court indicated

that, under such circumstances, the defendant commits second-degree felony murder

predicated on first-degree assault, but not necessarily second-degree specific-intent

---

[7]Hemophilia is "a serious disease that causes a person who has been cut or injured
to keep bleeding for a very long time[.]"  Hemophilia, Merriam-Webster,
http://www.merriam-webster.com/dictionary/hemophilia [https://perma.cc/C9P3-X786].

murder.  See id. at 730, 919 A.2d at 693.  By contrast, "using a deadly weapon directed at a vital part of the body may give rise to an inference of an intent to commit [serious] bodily [harm] or an intent to kill[,]" and thus lead to a conviction for second-degree specific-intent murder.  Id. at 712, 919 A.2d at 682 (citation and internal quotation marks omitted).[8]

In short, in Thornton, 397 Md. at 730, 919 A.2d at 693, we determined that "substantial risk of death" is not synonymous with "death would be the likely result."  To the contrary, "substantial risk of death" has a broader meaning—and thus encompasses more acts, and is easier to prove—than "death would be the likely result."  There is no reason to depart from the reasoning expressed in Thornton; indeed, our holding in Thornton mandates the conclusion that second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury is a lesser-included offense of second-degree specific-intent murder.

As to second-degree felony murder predicated on first-degree assault with a firearm, in this case, the Court of Special Appeals reasoned that, in a prosecution for second-degree felony murder predicated on first-degree assault with a firearm, the State must prove, among other elements, "that the way in which the [first-degree] assault with a firearm was committed created a 'reasonably foreseeable risk of death or of serious physical injury likely to result in death[.]'"  Jones, 222 Md. App. at 617, 114 A.3d at 265 (quoting MPJI-

---

[8]In Jones, 222 Md. App. at 611, 114 A.3d at 262, in its discussion of the elements of second-degree specific-intent murder, the Court of Special Appeals quoted parts of Thornton, 397 Md. at 730-31, 713, 919 A.2d at 693-94, 683.  Significantly, however, the Court of Special Appeals failed to note that, in Thornton, id. at 728, 919 A.2d at 692, this Court stated: "The requisite mental state for [second-degree specific-intent murder] is distinct from the requisite mental state for [first-degree] assault[.]"

Cr 4:17.7.2(B)).  The Court of Special Appeals determined that second-degree specific-intent murder is a lesser-included offense of second-degree felony murder predicated on first-degree assault with a firearm.  See Jones, 222 Md. App. at 619, 114 A.3d at 266 ("[S]econd-degree felony murder [predicat]ed on first-degree assault . . . require[s] proof of an additional element, that is, that the defendant committed or attempted to commit . . . first-degree assault, either by causing or attempting to cause serious physical injury to another or by committing an assault with a firearm.").  In its brief, the State contends that "second-degree felony murder [predicat]ed on first-degree assault [with a] firearm [] should not demand foreseeability of death as an additional element beyond the very use of the" firearm.  The State argues that, "[i]f a felony is inherently dangerous . . . , what the defendant did or did not subjectively foresee is irrelevant."

At trial, the circuit court instructed the jury on both forms of first-degree assault: the "intent to cause serious physical injury" form and the "firearm" form.  Without specifying the form of first-degree assault, the prosecutor announced the State's intent to prosecute Jones for second-degree felony murder predicated on first-degree assault.

With respect to first-degree assault with a firearm, the Majority concludes only that "[f]irst-degree assault, either intent to inflict serious physical injury or assault with a firearm, cannot, as a matter of law, serve as the underlying felony to support felony murder."  Maj. Slip. Op. at 27.  The Majority makes no distinction between first-degree assault with the intent to cause serious physical injury and first-degree assault with a firearm.  This is wrong.

Addressing the elements of felony murder, MPJI-Cr 4:17.7.2(B) provides, as to second-degree felony murder predicated on the "inherently dangerous manner in which [the] felony was perpetrated":

> [T]o convict the defendant of second[-]degree felony murder, the State must prove: (1) that [[the defendant] [another participating in the crime with the defendant]] [[committed] [attempted to commit]] (identify the crime), a felony; (2) that the way in which (identify the crime) was committed or attempted, under all of the circumstances, created a reasonably foreseeable risk of death or of serious physical injury likely to result in death; (3) that[,] as a result of the way in which (identify the crime) was committed or attempted, (name) was killed; and (4) that the act resulting in the death of (name) occurred during the [commission] [attempted commission] [escape from the immediate scene] of the (identify the crime).

(Some brackets in original) (paragraph breaks and underlining omitted). The "Notes on Use" accompanying MPJI-Cr 4:17.7.2 state:

> Use Part A of this instruction if the defendant is charged with second[-]degree felony murder and the predicate felony is first[-]degree assault under [CR] § 3-202(a)(1)[, *i.e.*, first-degree assault with the intent to cause serious physical injury].

> Use Part B of this instruction if the defendant is charged with second[-]degree felony murder and the predicate felony is one that is inherently dangerous to human life because of the way in which it was committed.

In other words, second-degree felony murder predicated on first-degree assault with a firearm, although not covered by MPJI-Cr 4:17.7.2(A), is covered by MPJI-Cr 4:17.7.2(B), as the Court of Special Appeals recognized. The Maryland Criminal Pattern Jury Instruction on first-degree assault states in pertinent part:

> [T]o convict the defendant of first[-]degree assault, the State must prove all of the elements of second[-]degree assault[,] and also must prove that: (1) the defendant used a firearm to commit assault; or (2) the defendant intended to cause serious physical injury in the commission of the assault.

- 38 -

MPJI-Cr 4:01.1 (paragraph breaks omitted). In turn, the Maryland Criminal Pattern Jury Instruction on the battery form of second-degree assault states in pertinent part:

> [T]o convict the defendant of [the battery form of second-degree] assault, the State must prove: (1) that the defendant caused [offensive physical contact with] [physical harm to] (name); (2) that the contact was the result of an intentional or reckless act of the defendant and was not accidental; and (3) that the contact was [not consented to by (name)] [not legally justified].

MPJI-Cr 4:01(C) (some brackets in original) (paragraph breaks and underlining omitted).

Synthesizing the relevant parts of the Maryland Criminal Pattern Jury Instructions on second-degree felony murder predicated on first-degree assault with a firearm (*i.e.*, second-degree felony murder predicated on a felony that was perpetrated in an inherently dangerous manner), first-degree assault, and the battery form of second-degree assault reveals that the elements of second-degree felony murder predicated on first-degree assault with a firearm are as follows. To convict the defendant of second-degree felony murder predicated on first-degree assault with a firearm, the State must prove that: (1) the defendant committed a first-degree assault with a firearm; (2) the way in which the first-degree assault with a firearm was committed, under all of the circumstances, created a reasonably foreseeable risk of death or of serious physical injury likely to result in death; (3) the defendant killed the victim; and (4) the act that resulted in the victim's death occurred during the first-degree assault with a firearm. To convict the defendant of first-degree assault with a firearm, the State must prove that: (1) the defendant used a firearm to cause physical harm to the victim; (2) the physical harm was the result of an intentional or reckless act of the defendant and was not accidental; and (3) the physical harm was not consented to by the victim or legally justified.

- 39 -

As the Court of Special Appeals did, I would determine that the way in which the first-degree assault with a firearm was committed in this case, under all of the circumstances, created a reasonably foreseeable risk of death or of serious physical injury likely to result in death. Indeed, as the Court of Special Appeals concluded: "[A] first-degree assault is committed in a manner that is 'dangerous to life' and 'made death a foreseeable consequence' when it is committed by using a firearm to shoot the victim multiple times, including twice in the head." Jones, 222 Md. App. at 616, 114 A.3d at 265 (citations omitted). Nonetheless, that is not the end of the inquiry.

Comparing the elements of second-degree specific-intent murder to the elements of second-degree felony murder predicated on first-degree assault with a firearm yields the unavoidable determination that second-degree specific-intent murder has the unique element of intent to kill or inflict such serious bodily harm that death would be the likely result, and second-degree felony murder predicated on first-degree assault with a firearm has the unique element of use of a firearm. And, second-degree felony murder predicated on first-degree assault with a firearm does not have the same intent element as second-degree specific-intent murder, as second-degree felony murder predicated on first-degree assault with a firearm does not require that the defendant intend to cause a reasonably foreseeable risk of death or of serious physical injury likely to result in death, but rather requires that the way in which the first-degree assault with a firearm was committed, under all of the circumstances, created a reasonably foreseeable risk of death or of serious physical injury likely to result in death.

In other words, the reasonable foreseeable risk of death is an element that depends on the way in which the first-degree assault with a firearm was committed, under all of the circumstances; the defendant need not have intended to create a reasonable foreseeable risk of death, or, as is required for second-degree specific-intent murder, intended "to kill or . . . inflict such serious bodily harm that death would be the likely result[.]" MPJI-Cr 4:17(B). Second-degree felony murder predicated on first-degree assault with a firearm, while encompassing the element that the use of the firearm created a reasonably foreseeable risk of death, does not require that the defendant have had the requisite intent for second-degree specific-intent murder, and includes the unique element that the offense be committed with a firearm. Thus, second-degree specific-intent murder and second-degree felony murder predicated on first-degree assault with a firearm do not have the same elements and are not the same offense.

### Double Jeopardy

I would conclude that, if a jury acquits a defendant of second-degree specific-intent murder and hangs on first-degree felony murder, the Double Jeopardy Clause does not bar the State from prosecuting the defendant for second-degree felony murder predicated on first-degree assault.

In sum, the State prosecuting Jones for second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury does not implicate the Double Jeopardy Clause because that form of murder is a lesser-included offense of second-degree specific-intent murder; in other words, here, the jury acquitted on a greater-inclusive offense (namely, second-degree specific-intent murder) and hung on a lesser-

- 41 -

included offense (namely, second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury).  And, the State prosecuting Jones for second-degree felony murder predicated on first-degree assault with a firearm does not implicate the Double Jeopardy Clause because its elements are not the same as those of second-degree specific intent murder.  For the reasons above, I would conclude that the State may prosecute Jones for second-degree felony murder predicated on first-degree assault.

For the above reasons, respectfully, I dissent.

Judge Greene and Judge Battaglia have authorized me to state that they join in this opinion.